# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1242

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Peter Charles Urqhart, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 26, 2006
Filed: November 22, 2006

_____

Before LOKEN, Chief Judge, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge,

Peter Charles Urqhart appeals his conviction for illegal reentry into the United States after prior deportation. Urqhart claims that admission at trial of a Certificate of Nonexistence of Record (CNR) violated his Sixth Amendment right to confrontation in light of Crawford v. Washington, 541 U.S. 36 (2004), a question of first impression in this circuit. He also claims that the district court[1] erred in denying his motion for mistrial. Because a CNR from a defendant's "alien-file" ("A-file")

---

[1]The Honorable Laurie Smith Camp, United States District Court Judge for the District of Nebraska.

constitutes nontestimonial evidence, and because the district court did not abuse its discretion in denying the motion for mistrial, we affirm.

## I.    BACKGROUND

In May of 2005, an officer of the Nebraska State Patrol found Urqhart walking alongside Interstate 80 near Sidney, Nebraska. After speaking with him, and forming the belief that Urqhart was not a citizen of the United States, the patrolman contacted Special Agent John Ferreira of the Bureau of Immigration and Customs Enforcement (BICE). After Urqhart's detention, Ferreira spoke with him and learned that Urqhart, admittedly from Canada, was a deportee from the United States. After obtaining BICE's "A-file" for Urqhart, Ferreira confirmed that Urqhart's fingerprints matched the fingerprints in the "A-file." Urqhart was indicted for reentering the United States without permission after deportation, in violation of 8 U.S.C. § 1326(a).

During voir dire at Urqhart's trial, the district court judge stated that "[t]he defendant in this case is from Canada." After the judge's voir dire, defense counsel requested a motion for mistrial based on the announcement. The defense argued that the court's statement established alienage, a required element in an 8 U.S.C. § 1326(a) charge, alleviating the prosecution's burden of proving all elements beyond a reasonable doubt. Rather than declaring a mistrial and calling a new jury, the court gave the following curative instruction:

> Before counsel begins voir dire in this matter, I want to mention a couple of things to you. One is that nothing I say during voir dire is evidence in this case, nor is anything that I say during voir dire an instruction on the law. . . . Earlier I made a reference to Canada and we discussed Canada and whether or not anyone had attitudes or opinions about Canada that might affect their judgment in this case and cause them to favor one side over the other. I anticipate that there will be some evidence introduced in the case about the defendant having an association with the country of Canada. That is for you to decide,

whether the defendant has any association with the country of Canada and what that association may or may not be.

During trial, Ferreira testified that an individual's "A-file" contains hard copies of all relevant documents maintained by BICE. Through Ferreira, the prosecution introduced the "A-file" and its partial contents. This included, among other documents, a "Final Administrative Removal Order" and a "Warrant of Removal/Deportation" for Urqhart. Finally, Ferreira testified the "A-file" did not contain a request for permission to reenter, known as a Form 212. In addition to personally searching the file, Ferreira contacted the BICE records branch "to have them go through all the databases to ensure that no application or claim for [a Form 212] was currently in our computer databases." In response to Ferreira's inquiry, Mike Quinn, Acting Chief in the Records Services Branch, issued a CNR stating that "after a diligent search" of three databases, "no record was found to exist indicating that [Urqhart] obtained consent . . . for re-admission in the United States." The district court, consistent with its pre-trial denial of a motion in limine to exclude the CNR in light of Crawford, received the document into evidence. Quinn was not present at the trial.

Based on this evidence, and expert testimony regarding the fingerprints, a jury convicted Urqhart of reentering the United States without permission after deportation. He now appeals.

## II. DISCUSSION

"We review *de novo* the denial of an objection to the admission of evidence based on the Confrontation Clause of the Sixth Amendment." United States v. Clemmons, 461 F.3d 1057, 1060 (8th Cir. 2006). We review a denial of a motion for mistrial for abuse of discretion. E.g., United States v. Katz, 445 F.3d 1023, 1034 (8th Cir.), cert. denied, 127 S. Ct. 421 (2006).

## A. Admission of the CNR and the Confrontation Clause

Urqhart contends that admitting Quinn's written CNR, without a showing of unavailability and a prior opportunity for cross-examination, violated the Sixth Amendment's Confrontation Clause. As the district court noted, we held in United States v. Hale, 978 F.2d 1016 (8th Cir. 1992), that admission of a CNR does not violate the constitutional right of confrontation. Id. at 1021. We based this rationale on the fact that the record is admissible under Federal Rule of Evidence 803(10) as an exception to the hearsay rule. Id.

The Supreme Court in Crawford, however, noted that laws of evidence do not define the parameters of the Confrontation Clause. 541 U.S. at 51. Rather, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68. The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" id., instead offering examples based in history. See id. at 51-52 (examples of testimonial statements); 56 (historical exceptions). In delineating these categories, the Court explained that "there is scant evidence that [the historical] exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case." Id. at 56. Instead, "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial–for example, business records," among others. Id. See also id. at 76 (Rehnquist, C.J., concurring) (noting the majority properly excluded business records from testimonial statements).

We have not reviewed our holding in Hale since Crawford to determine whether a CNR is "testimonial," thus requiring the showing of unavailability and a prior opportunity for cross-examination. Upon considering the question, all other circuits have held that a CNR is nontestimonial in nature. United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005), cert. denied, 126 S. Ct. 1911 (2006); United States v.

Mendoza-Orellana, 133 F. App'x 68 (4th Cir. 2005) (unpublished); United States v. Rueda-Rivera, 396 F.3d 678 (5th Cir. 2005).  We agree.

We find the rationale of Cervantes-Flores persuasive as it pertains to the nontestimonial nature of CNRs.  There, the United States charged Cervantes with reentry without permission after deportation.  421 F.3d at 828.  As here, the district court admitted a CNR to prove Cervantes lacked permission to reenter.  Id. at 830.

The Ninth Circuit in Cervantes-Flores looked at the nature and context of a CNR to determine whether it was testimonial.  Id. at 832-833.  Cervantes-Flores states, as we have, that Crawford seemingly excluded business records from the classification of testimonial statements.  Id. at 832.  The court noted that the CNR, certifying that a Form 212 is not present, "certified that a record that the [BICE] would keep in the course of its regularly conducted activities did not exist in the agency's files."  Id.  Even if a Form 212 existed, BICE would certify that fact and both the certification and the Form would be admissible as official records of the BICE.  Id.  Thus, a CNR, certifying that the Form 212 does not exist, is similar enough to a business record that it is nontestimonial under Crawford and presents no Confrontation Clause concerns.

Urqhart argues, as did Cervantes, id., that the government prepared this document for use against him at his criminal trial.  Crawford cited this scenario as an area of particular concern.  541 U.S. at 56 n.7 ("Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse.").  Yet as the discussion above explains, while Quinn created the CNR at the request of Special Agent Ferreira, the underlying subject matter–the absence of a Form 212–existed when the Nebraska State Patrol found Urqhart on Interstate 80.

Thus, likening the CNR to a business record, we follow the lead of our sister circuits and hold that a CNR is nontestimonial evidence under <u>Crawford</u>. The district court properly received it into evidence.

## B.     Denial of Motion for Mistrial

Urqhart further claims that the trial judge's statement that Urqhart was from Canada required a mistrial. We disagree.

We give the district court "broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect" of any possible prejudice. <u>United States v. Davidson</u>, 122 F.3d 531, 538 (8th Cir. 1997). Further, the district court is in the best position to craft a remedy, given that "less drastic measures [than mistrial] such as a cautionary instruction are generally sufficient to alleviate prejudice" stemming from accidental comments. <u>Id.</u>   Finally, where there is "substantial evidence of appellant's guilt, any error in the failure to declare a mistrial was harmless." <u>United States v. Urick</u>, 431 F.3d 300, 305 (8th Cir. 2005).

We hold that the district court did not abuse its discretion in denying the motion for mistrial. The court gave an extensive curative instruction immediately after Urqhart's counsel brought the matter to the court's attention. We believe the instruction cured any harm. And, even if it did not, we find that there is substantial evidence supporting Urqhart's guilt, making any possible error harmless.

## III.   CONCLUSION

Because a CNR is nontestimonial evidence under <u>Crawford</u>, and because the district court did not abuse its discretion in denying the motion for mistrial, we affirm the district court in all respects.

_____