STATE of Minnesota, Appellant,

v.

Jason Michael VONDERHARR,
Respondent.

No. A06–2421.

Court of Appeals of Minnesota.

July 3, 2007.

Lori Swanson, Attorney General, St. Paul, MN, and Richard R. Maes, Lyon County Attorney, Tricia Zimmer, Assistant County Attorney, Marshall, MN, for appellant.

Ronald R. Frauenshuh, Jr., Ortonville, MN, for respondent.

Considered and decided by
PETERSON, Presiding Judge;
TOUSSAINT, Chief Judge; and
COLLINS, Judge.*

## OPINION

PETERSON, Judge.

This pretrial prosecution appeal is from an order that requires appellant State of Minnesota to produce a records custodian at trial to provide foundation testimony for Department of Public Safety records in a prosecution for violating a restricted driver's license. In a cross-appeal, respondent Jason Vonderharr challenges an order that denies his motions to suppress evidence and dismiss the charge against him. We reverse the order that requires the state to produce a records custodian at trial, affirm the denial of respondent's suppression motion and motion to dismiss, and remand.

## FACTS

A state trooper who responded to a report that a vehicle was stuck in the median of a state highway found the vehicle unattended. The trooper used the computer in his squad car to run a license-plate check on the vehicle, and while the trooper was at the scene, a vehicle pulled up and stopped behind the trooper's squad car. Respondent Jason Vonderharr got out of the vehicle and approached the driver's side of the squad car. Vonderharr told the trooper that he owned the vehicle that was stuck in the median and that he had been driving the vehicle.

Because the weather was rainy and Vonderharr was standing close to traffic on the highway, the trooper asked Vonderharr to sit in the squad car. Vonderharr sat in the front seat of the squad car. While speaking with Vonderharr, the trooper smelled an odor of alcohol coming from Vonderharr. The trooper asked Vonderharr if he had been drinking, and Vonderharr denied drinking any alcohol. The trooper told Vonderharr that he could get his vehicle pulled out of the median, but he asked Vonderharr to return to the squad car after taking care of the vehicle.

While the trooper blocked traffic, Vonderharr got in his vehicle, and the vehicle was pulled out of the median. Vonderharr then returned to the squad car. By that time, the trooper had used the computer in his squad car to check Vonderharr's driver's license and had learned that Vonderharr had a restricted driver's license, which was invalidated by any use of alcohol. The trooper again smelled alcohol and again asked Vonderharr if he had been drinking. Vonderharr admitted drinking one beer after work. The trooper administered a preliminary breath test,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

which revealed an alcohol concentration of .011.

Vonderharr was charged by complaint with driving in violation of a restricted driver's license.[1] Vonderharr moved to (1) suppress any confessions, admissions, or statements in the nature of confessions that he had made and any evidence that had been discovered as the result of any statements that he had made; and (2) dismiss the charge for lack of probable cause. Following a hearing, the district court denied Vonderharr's motions to suppress and dismiss, and a jury trial was scheduled. Four days before the trial was scheduled to begin, the state filed a motion in limine requesting an order allowing the state to introduce certified copies of Department of Public Safety (DPS) records about the status of Vonderharr's driver's license at trial without calling a records custodian as a witness.

On the day before trial was scheduled to begin, the district court issued an order requiring the state to produce a records custodian to lay foundation for the certified DPS records. The state requested a five-day stay under Minn. R.Crim. P. 28.04, subd. 2(1), to allow time to perfect an appeal from the pretrial order, arguing that the state could not secure a witness for trial and would not be able to prove its case without the records. The district court granted the stay, and to provide a complete record, the district court filed an amended order regarding the state's request to admit the DPS records without the testimony of a custodian. The state perfected an appeal, and Vonderharr filed a cross-appeal under Minn. R.Crim. P. 28.04, subd. 3, seeking review of the district court's denial of his motions to suppress and to dismiss the charge.

## ISSUES

I. Did the district court err in requiring the state to produce a records custodian at trial to provide foundation testimony for the Department of Public Safety records?

II. Did the district court err in denying Vonderharr's motions to suppress evidence and dismiss the charge of driving in violation of a restricted driver's license?

## ANALYSIS

### I.

"[I]n reviewing pretrial prosecution appeals, this court 'will only reverse the determination of the trial court if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.'"[2] *State v. Poupard,* 471 N.W.2d 686, 689 (Minn.App.1991) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)). The district court concluded that admitting the DPS records without the testimony of a records custodian would violate Vonderharr's rights under the Confrontation Clause as interpreted by the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *See* U.S. Const. amend. VI ("In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against

---

1. The complaint was later amended to add a charge of failure to provide proof of insurance, but the additional charge was dismissed following the omnibus hearing.

2. In a previous order, this court determined that "the state has shown that the district court's order has a critical impact on the outcome of this prosecution." *State v. Vonderharr,* No. A06–2421 (Minn.App. Feb.27, 2007) (order). Therefore, we will not further address critical impact. *See* Minn. R. Civ. App. P. 140.01 ("No petition for rehearing shall be allowed in the Court of Appeals.").

him . . . .”). To obtain reversal, the state must demonstrate clearly and unequivocally that the district court erred in this conclusion. Whether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law, which this court reviews de novo. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn.2006).

In *Crawford*, the Supreme Court held that when testimonial evidence is at issue, an out-of-court statement is inadmissible unless the declarant is not available to testify at trial and the defendant has had an opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. at 1374. There is no dispute that the DPS records contain out-of-court statements, and Vonderharr has not had an opportunity to cross-examine the declarant. The state argues, however, that because the DPS records are not testimonial evidence, their admissibility is not affected by the Supreme Court's decision in *Crawford*.

Although the rule that the Supreme Court announced in *Crawford* applies only to testimonial evidence, the Supreme Court did not define "testimonial" and, instead, left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* But in analyzing the historical background of the Confrontation Clause, the Supreme Court identified some examples of statements that are not testimonial. The Supreme Court explained that by 1791, several exceptions to the general rule of excluding hearsay evidence had become well established. *Id.* at 56, 124 S.Ct. at 1367. The Supreme Court then explained:

> But there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case. Most of the hearsay exceptions covered statements that by their nature were not testimonial-for ex-

ample, business records or statements in furtherance of a conspiracy. We do not infer from these that the Framers thought exceptions would apply even to prior testimony.

*Id.* (footnote omitted); *see also id.* at 76, 124 S.Ct. at 1378 (Rehnquist, C.J., concurring in judgment) ("To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records.")

Citing this language in *Crawford*, the United States Court of Appeals for the Eighth Circuit determined "that *Crawford* seemingly excluded business records from the classification of testimonial statements." *United States v. Urqhart*, 469 F.3d 745, 748 (8th Cir.2006). The *Urqhart* court then concluded that a record that the Bureau of Immigration and Customs Enforcement kept in the course of its regularly conducted business activities "is similar enough to a business record that it is nontestimonial under *Crawford* and presents no Confrontation Clause concerns." *Id.* at 749. Based on this conclusion, the *Urqhart* court held that the record was properly admitted into evidence without a showing of unavailability and a prior opportunity for cross-examination. *Id.*

Following *Urqhart*, the Eighth Circuit Court of Appeals applied the same rationale to warrants of deportation in *United States v. Torres–Villalobos*, 487 F.3d 607, 612–13 (8th Cir.2007). The *Torres–Villalobos* court explained:

> A warrant of deportation is a document that commands an immigration official to take custody of the deportee and to remove him from the United States. A signed warrant indicates that the attesting witness observed the deportee leaving the country. . . . [T]he government introduced the warrants of deportation to prove the element of the charged offense that Torres–Villalobos had been

deported in the past. The witness who testified concerning the February 2003 warrant explained that he could not specifically recall seeing Torres–Villalobos cross the border, but that his regular practice was to sign the warrant upon seeing the alien depart the country, and that the records therefore accurately reflected the fact of his observations at the time. Because the government could not produce testimony from someone who actually recalled seeing Torres–Villalobos leave the country, Torres–Villalobos argues that admission of the warrant of deportation denied him the right to confront his accuser.

487 F.3d at 612 (citations omitted).

The court determined:

Warrants of deportation are produced under circumstances objectively indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions. They are properly characterized as non-testimonial official records that were prepared independent of this litigation.

*Id.* at 612–13 (citation omitted). Based on these determinations, the court concluded that "warrants of deportation are not 'testimonial' evidence that implicate the Confrontation Clause of the Sixth Amendment." *Id.*

We conclude that the rationale applied by the Court of Appeals in *Urqhart* and *Torres–Villalobos* also applies to the DPS records regarding Vonderharr's driver's license. Just as the primary purpose of warrants of deportation is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, the primary purpose of DPS driver's-license records is to provide current information about the license status of drivers to ensure that only drivers with valid licenses operate motor vehicles in the state.

Citing *State v. Caulfield*, the district court concluded that the DPS records are testimonial evidence because the records "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 722 N.W.2d at 308 (quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. at 1364). In reaching this conclusion, the district court determined:

The primary purpose of the State in maintaining such a[DPS] record is to verify the driving status and to maintain and preserve such records for the purpose of criminal prosecution of those who violate the terms of the drivers license. . . . The clear intent of the State must be to maintain these records so that appropriate prosecutions can be undertaken.

But the DPS records are significantly different from the laboratory report that was at issue in *Caulfield*. The laboratory report was produced by an analyst at the Bureau of Criminal Apprehension who analyzed a substance that was seized from the defendant when he was arrested. *Id.* at 307. The report was prepared at the request of the police for the prosecution of the defendant. *Id.* at 309. Unlike the laboratory report, Vonderharr's DPS records were not prepared for the purpose of prosecuting Vonderharr. The records were produced before Vonderharr was charged and even before the incident that lead to him being charged occurred.

Like the warrant of deportation in *Torres–Villalobos*, the DPS records will be used as evidence to prove an element of the offense with which Vonderharr has been charged. And it is likely that the district court was correct when it deter-

mined that it was reasonable for the person who created the DPS records to believe that the records would be available for this purpose. But it was also reasonable for the witness who created the warrant of deportation to believe that it would be available to prove facts in a later criminal prosecution, and the *Torres–Villalobos* court, nevertheless, concluded that the warrant of deportation was not testimonial evidence. The mere fact that the warrant of deportation could be used in a criminal prosecution did not mean that it was created for that purpose, and the mere fact that the DPS records can be used in a criminal prosecution does not mean that they were created for that purpose. Consequently, we conclude that like the warrant of deportation at issue in *Torres–Villalobos,* the DPS records are not testimonial evidence that implicates the Confrontation Clause of the Sixth Amendment.

The district court cited *State v. Brown,* 303 Minn. 114, 226 N.W.2d 747 (1975), as an additional basis for requiring a records custodian to testify to establish a foundation for the DPS records. In *Brown,* the supreme court held that admitting certified copies of DPS records under Minn. Stat. § 171.21 without having a records custodian appear as a witness at trial did not violate the defendant's right to confront and cross-examine witnesses. 303 Minn. at 116–18, 226 N.W.2d at 748–49; *see* Minn.Stat. § 171.21 (2006) ("Copies of any of the files or records of the [DPS] certified by the commissioner as being true copies shall be received in evidence in any court in this state with the same force and effect as the originals."). In reaching this holding, the supreme court determined that DPS records are official records under Minn.Stat. § 600.13, rather than business records under Minn.Stat. § 600.02, and noted that there is "a presumption of accuracy and trustworthiness of official records" and that "it is obviously

desirable to avoid the administrative burden of requiring governmental employees or officers to testify whenever an official record is sought to be employed as evidence." 303 Minn. at 116, 226 N.W.2d at 748. But although the supreme court held that no records custodian needed to testify in *Brown,* it also cautioned:

> We do not hold that in a proper case where defendant offers evidence to substantiate his claim that he was unaware of the suspension of his license, or the reasons therefor, or that notice of such suspension was not given him, that a trial court could not order a state official to be called and to testify as to how the driver's records were prepared. . . .

*Id.* at 118, 226 N.W.2d at 749.

Citing this language in *Brown,* the district court concluded that this case can be distinguished from *Brown* because unlike in *Brown,* Vonderharr claims that he "was unaware of the restriction on his license and/or that [his] license was not restricted at the time the offense was charged." But our review of the record persuades us that Vonderharr's claim is insufficient to make his case a proper case for relief under the supreme court's cautionary statement in *Brown* because Vonderharr did not offer evidence to substantiate his claim. In *Brown,* the supreme court did not suggest that a district court could order a records custodian to testify simply because a defendant claimed that he was unaware that his license was restricted. The supreme court referred to a defendant who offered evidence to substantiate his claim, and we have found no evidence that Vonderharr offered to substantiate his claim that his driver's license was not restricted or that he was not aware that his driver's license was restricted at the time of the incident that lead to him being charged.

## II.

In a cross-appeal, Vonderharr seeks review of the district court's order denying his motions to suppress evidence and to dismiss the charge against him. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999).

Vonderharr acknowledges that no seizure occurred during his initial encounter with the trooper because the encounter did not begin as the result of a traffic stop; it began when he approached the trooper. *See State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980) (holding that no seizure of vehicle occurred because vehicle was already stopped, defendant did not try to drive away, and officer had a right to walk up to vehicle, which is where officer was when he observed marijuana). Vonderharr contends that a seizure occurred when the trooper conducted a "second investigation" by asking Vonderharr a second time whether he had consumed alcohol and then requesting a preliminary breath test (PBT). Vonderharr argues that this "second investigation clearly was a stop and the officer was investigating a crime without probable cause." Therefore, Vonderharr concludes, the district court erred in denying his motions to suppress evidence and dismiss the charge against him.

But "[a] brief investigatory stop requires only reasonable suspicion of criminal activity, rather than probable cause." *State v. Pike,* 551 N.W.2d 919, 921 (Minn. 1996). "The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant

that intrusion.'" *Id.* at 921–22 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). "A limited investigative stop is lawful if the state can show the officer to have had a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 921 (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

The facts available to the trooper when he asked Vonderharr a second time whether he had been drinking established a particularized and objective basis for suspecting Vonderharr of criminal activity. The trooper smelled alcohol and knew that Vonderharr had been driving and had a license restriction that prohibited the consumption of alcohol. And when the trooper asked Vonderharr if he had been drinking and Vonderharr admitted that he had consumed alcohol, the trooper had a basis for requesting that Vonderharr submit to a PBT. *See State v. Vievering,* 383 N.W.2d 729, 730 (Minn.App.1986) (holding that, to request PBT, officer needs only articulable facts supporting belief that DWI violation occurred, not probable cause), *review denied* (Minn. May 16, 1986).

Vonderharr also argues that the district court erred in concluding that he was not entitled to receive a *Miranda* warning before the trooper asked questions during the "second investigation." "Statements made by a suspect during custodial interrogation are generally inadmissible unless the suspect is first given a *Miranda* warning." *State v. Edrozo,* 578 N.W.2d 719, 724 (Minn.1998) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "*Miranda* warnings are required in order to protect a defendant's Fifth Amendment privilege against self-incrimination." *Id.* But an officer's general on-site questioning

during an investigative stop, even if the questioning occurs in a patrol car, is not custodial interrogation requiring a *Miranda* warning. *State v. Herem,* 384 N.W.2d 880, 883 (Minn.1986); *State v. Kline,* 351 N.W.2d 388, 390 (Minn.App. 1984). And requesting a PBT is not a custodial interrogation under *Miranda. Kline,* 351 N.W.2d at 390.

Vonderharr asserts that he "did not feel he was free to leave because the officer had already asked the same question." But a *Miranda* warning was not required because Vonderharr was not subjected to "treatment which can fairly be characterized as the functional equivalent of formal arrest." *Herem,* 384 N.W.2d at 883. The trooper only asked Vonderharr general questions about his alcohol consumption and requested a PBT, which did not rise to the level of a custodial interrogation.

■ Finally, Vonderharr argues that he was denied the protections to which he was entitled under *State v. Askerooth,* 681 N.W.2d 353 (Minn.2004). In *Askerooth,* the supreme court held that

> Article I, Section 10 of the Minnesota Constitution requires that each incremental intrusion during a traffic stop be tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry.* Furthermore, the basis for the intrusion must be individualized to the person toward whom the intrusion is directed.

681 N.W.2d at 365.

We see no violation of this principle. No seizure occurred during Vonderharr's initial encounter with the trooper. When the trooper asked Vonderharr a second time whether he had been drinking, the trooper had a particularized and objective basis for suspecting Vonderharr of criminal activity, and investigating this possible criminal activity was the original legitimate purpose for stopping Vonderharr. Everything that the trooper did was justified by this original legitimate purpose for stopping Vonderharr.

## DECISION

Because certified copies of Department of Public Safety records about the status of a driver's license that were not prepared for the purpose of prosecuting the driver are not testimonial evidence that implicates the Confrontation Clause of the Sixth Amendment, we reverse the district court's order requiring the state to produce a records custodian at trial to provide foundation for admitting those records, and remand for further proceedings. Because the trooper did nothing that violated Vonderharr's constitutional rights, we affirm the district court's order denying Vonderharr's motions to suppress and dismiss.

**Affirmed in part, reversed in part, and remanded.**