Kenneth **MILLARD**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 06–CF–905.

District of Columbia Court of Appeals.

Argued Oct. 16, 2008.

Decided March 12, 2009.

**156**

Jonathan Anderson, Public Defender Service, with whom Joshua Deahl, James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, Alessio D. Evangelista, Assistant United States Attorneys and Thomas J. Tourish, Jr., Assistant United States Attorney at the time, were on the brief, for appellee.

Before KRAMER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

On May 8, 2006, a jury convicted appellant Kenneth Millard of possession of marijuana, see D.C.Code § 48–904.01(d); possession of cocaine, see id.; carrying a pistol without a license ("CPWL"), see D.C.Code § 22–4504(a); possession of an unregistered firearm ("UF"), see D.C.Code § 7–2502.01; and unlawful possession of ammunition ("UA"), see D.C.Code § 7–2506.01(3). By order dated June 5, 2008, we granted appellant's unopposed motion to vacate both of his drug possession convictions on the ground that the trial court's admission of a Drug Enforcement Administration ("DEA") substance analysis report (a so-called "DEA–7 report") without testimony by the authoring chemist violated the Sixth Amendment Confrontation Clause and was not harmless error.[1] We now vacate appellant's weapon convictions as well because we believe there is a reasonable possibility that admission of the DEA–7 report contributed to the jury's guilty verdict on those charges.

**I.**

In summary, the evidence at trial was as follows. Metropolitan Police Department (MPD) Officer Howard Anderson testified that, shortly before 8 p.m. on February 9, 2005, he and Officers Marc Wilkins and Mark Harrison, all wearing police vests, were parked in the 2700 block of Jasper Road, S.E. in their unmarked police vehi-

1. At trial, the defense objected to the admission of the DEA–7 report on the basis of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The basis for our June 5, 2008 order vacating appellant's drug convictions was our decision in *Thomas v. United States*, 914 A.2d 1 (D.C. 2006) (holding, in light of *Crawford*, that admission of a DEA–7 report without the authoring chemist having been called to appear and testify in person violates a criminal defendant's Sixth Amendment right to confront the witnesses against him).

cle.[2] The vehicle was at the bottom of a dirt path or "cut" that ran down a steep, wooded hill to the roadway. Appellant Millard "popped out of the woods" and ran into the left front quarter panel of the officers' vehicle. After bouncing off the vehicle and falling, appellant grabbed his right waist area with his right hand as he rose to his feet. Perceiving appellant's grabbing motion as an indication that appellant had a gun, Officer Anderson exited the car and began chasing appellant down the sidewalk. When they had run just a few feet away from the car, Officer Anderson tried to hit appellant's shoulder, but appellant jerked away and again grabbed his right waist area. Officer Anderson then slapped appellant's right elbow and a handgun "flew out" from appellant's waistband. Appellant reversed direction and, as he was passing the police vehicle again, Officer Harrison emerged and helped Officer Anderson tackle and handcuff appellant. Besides appellant, police detained two other individuals who were in the vicinity that night. Officer Anderson also acknowledged that, in his Gerstein affidavit, he wrote that there were other individuals who ran through a "cut" in the area that night.[3]

Officer Harrison substantially corroborated Anderson's testimony. Although he did not see a gun fly out from appellant's person, he recalled hearing the "clang" of a metallic object hitting the sidewalk when Officer Anderson was struggling with appellant. While searching appellant incident to his arrest, Officer Harrison found in the right front pocket of the jumpsuit that appellant was wearing an envelope containing cash and ten zip-lock bags containing a "greenish weed substance" and a "white chunk-like substance." The DEA–7 report that the government offered into evidence and that was admitted over defense objections identified the "greenish weed substance" as marijuana and the "white chunk-like substance" as cocaine.

Officer Matthew Nickerson testified that he recovered a loaded Colt .22 semi-automatic handgun from the sidewalk on Jasper Road. An MPD fingerprint expert testified that the analysis of latent fingerprints recovered from the gun was inconclusive. Police also recovered a second handgun from a dumpster between Jasper Road and Robinson Place. The government's evidence also included a Certificate of No Record of License to Carry a Pistol, and a Certificate of No Registration of a Firearm. Defense counsel objected to these exhibits on the basis of *Crawford*.

The defense called Investigator Adam Choka, who testified that he visited Jasper Road and located the three sites where (according to the defense's interpretation of the government evidence) MPD officers saw appellant emerge from the woods, effectuated the arrest, and recovered the Colt .22 handgun. Referring to photographs of the area, Investigator Choka testified that, relative to the point where appellant ran out of the woods above Jasper Road, the location from which police

---

**2.** On cross-examination, Officer Anderson testified that he did not recall whether it was dark outside.

**3.** Officer Anderson testified on re-direct, however, that "nobody else ran through that cut" (presumably referring to the cut through which appellant ran).

Officer Leroy Rollins testified that he was involved in the same police operation as Officers Anderson and Harrison on the night in question, but was waiting on Robinson Place, the street that runs along the hill above Jasper Road. He observed several individuals gathered near a parking lot and, when he pulled up in his (unmarked) car, the individuals scattered. Two people ran by him, one of whom fled behind a nearby building and one of whom went into the woods towards Jasper Road.

retrieved the gun was several feet in the opposite direction from the place where police tackled appellant. Investigator Choka further testified that the only street-lamps on Jasper Road are across the street from the sidewalk bordering the woods, and that the sidewalk itself (where police found the Colt .22 handgun) was unlit.

Defense counsel sought to call Officer Mark Harrison back to the stand to testify that, on the day after the arrest, MPD officers searched appellant's house pursuant to a warrant for drugs and drug paraphernalia, but found nothing incriminating. The trial judge (the Honorable Lynn Leibovitz) precluded the proffered testimony as irrelevant.

## II.

■ Appellant argues that the erroneous admission of the DEA–7 report tainted the entire trial, entitling him to reversal not only of his drug-possession convictions, but also of his weapon convictions. As appellant emphasizes, where constitutional error has occurred at trial, we may affirm a judgment of conviction only if the error was "harmless beyond a reasonable doubt" as to the conviction. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fields v. United States*, 952 A.2d 859, 860 (2008). Here, reversal is required if there is a "reasonable possibility" that the error in admitting the DEA–7 report "might have contributed" to the guilty verdict on the weapon charges. *Smith v. United States*, 2009 WL 513092, *3, 2009 D.C.App. LEXIS 18765, *9 (D.C., Feb. 26, 2009) (citing *Chapman, supra*, 386 U.S. at 23, 87 S.Ct. 824). Only if there was "overwhelming evidence" of guilt, aside from the DEA–7 report, may the weapon convictions stand. *Smith*, 2009 WL 513092, *3, 2009 D.C.App. LEXIS 18765 at *9, (citing *Harrington v.*

*California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)).

We conclude that there is a reasonable possibility that admission of the DEA drug analysis report did contribute to the guilty verdict on the weapon charges. During closing arguments, defense counsel's remarks focused exclusively on the evidence related to those charges. In rebuttal, the prosecutor urged the jury to reject the defense theory that there was a merely coincidental relationship between appellant's possession of drugs when he ran through the cut toward Jasper Road, and the gun found on the sidewalk along Jasper Road. Telling the jury that "the defendant is not, as the defense seems to want you to believe, the unluckiest person in the world," the prosecutor mocked the defense suggestion that appellant "just happened to be on Jasper Road with cocaine and marijuana in his pocket and a gun was lying there." Thus, the prosecution invited jurors to draw a connection between the drugs that appellant was carrying (which the defense did not deny during closing argument) and the Colt .22 handgun found in the vicinity of appellant's arrest. In this context, the DEA–7 report confirming that the weed substance and white "chunk-like" substance that police found on appellant actually were marijuana and cocaine could well have helped persuade the jury that appellant had been carrying the loaded gun that police recovered.

Further, we cannot say that the government's evidence against appellant as to the weapon charges was overwhelming. Officer Harrison heard a metallic "clang" but never saw appellant with a gun. Officer Anderson testified to seeing a gun fly out of appellant's waistband, but the defense challenged the accuracy and credibility of his testimony on several grounds. The incident took place on the unlit side of

Jasper Road around 8 p.m. on a February night, when it would have been dark outside, making clear observation more difficult. Defense counsel argued to the jury that Officer Anderson's general credibility was undermined by his "reluctan[ce]" to "admit that it would be nighttime." [4] Defense counsel also emphasized that a photograph entered into evidence showed that on the night of his arrest, appellant was wearing coveralls, an article of clothing on which "[t]here is no waistband and there is no way a gun pops out of that waistband." The latent fingerprints lifted from the gun that police recovered could not be matched to anyone, and (the defense argued, on the basis of Investigator Choka's testimony) the gun was found some distance from where it would likely have fallen if it had "flown" out of appellant's possession at the location where Officer Anderson slapped appellant's arm. Both Officers Anderson and Harrison testified that appellant was holding his waistband area after he got up from falling and continued running, but that action was not inconsistent with the possibility that appellant injured himself when he ran into the police vehicle and fell to the ground. Further, the police officers' testimony confirmed that other individuals scattered at the sight of police and ran through a "cut" toward Jasper Road that same evening, that a second gun was recovered nearby, and that two other individuals were arrested in the vicinity the same evening.

4. See note 2 *supra.*

5. *See Winters v. United States,* 317 A.2d 530 (D.C.1974).

6. We read appellant's "Unopposed Motion to Vacate [Drug] Convictions and Remand for Retrial" to indicate that appellant was scheduled to complete serving his jail time on the weapon convictions on October 13, 2008. Because it appears that by now appellant has completed serving that time, we surmise that

Of course, to prove its case, the government was "not required to negate every possible inference of [appellant's] innocence," *Coleman v. United States,* 948 A.2d 534 (D.C.2008), and appellant does not argue before us that the evidence was insufficient to convict him of the weapon charges. But we agree with appellant that, on the whole, the evidence was not so overwhelming that any reasonable juror would have been compelled to find that appellant carried and possessed the loaded Colt .22 handgun that police recovered on the Jasper Road sidewalk. Indeed, having found appellant guilty on the drug-possession charges, the jury was initially deadlocked on the weapon charges, and found appellant guilty on those charges only after the court gave a *Winters* anti-deadlock instruction [5] and asked the jury to resume its deliberations.

Because there is a reasonable possibility that the erroneously-admitted DEA–7 report contributed to the verdict on the weapon charges and because the evidence supporting those charges was not overwhelming, we vacate appellant's CPWL, UF and UA convictions.

## III.

■ We turn to appellant's remaining arguments in the event that they arise on (possible) retrial.[6] First, we analyze appellant's argument that, under the Supreme Court's holdings in *Crawford* and in *Davis v. Washington,* 547 U.S. 813, 126

"retrial is doubtful." *Saltys v. Adams,* 465 F.2d 1023, 1029 (2d Cir.1972). Nevertheless, the government "must be given an opportunity to retry [appellant] constitutionally." *Id.; see also Burks v. United States,* 437 U.S. 1, 12, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial") (citation omitted); *McNeil v. United States,* 933 A.2d 354, 357 (D.C.2007).

S.Ct. 2266, 165 L.Ed.2d 224 (2006), and this court's holding in *Thomas,* the "Certificate of No Record for a License to Carry a Pistol"[7] and the "Certificate of No Record of a Registered Firearm"[8] (documents that we refer to hereinafter as "CNRs") that the government introduced were constitutionally inadmissible without the in-court testimony of the individual(s) who searched the relevant records.

In *Crawford,* the Supreme Court held that the admission of hearsay evidence against a criminal defendant without affording the defendant an opportunity to cross-examine the declarant violates the Sixth Amendment Confrontation Clause if the hearsay is "testimonial."[9] *See Crawford,* 541 U.S. at 59, 124 S.Ct. 1354.[10] The Court noted that, according to its dictionary definition, "testimony" is "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" *id.* at 51, 124 S.Ct. 1354 (citation omitted), and that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* The Court observed that the "history underlying the common-law right of confrontation thus reflects an especially acute concern with a specific type of out-of-court state-

---

7.  The Certificate of No Record of a License to Carry a Pistol reads:

    This is to certify that the records of the Metropolitan Police Department relating to the issuance of licenses to carry a pistol are in my custody and control, pursuant to the above-quoted directive of the Chief of Police of which I certify the foregoing is a true and accurate copy, and state that a diligent search has been made of those records for information concerning the following described person: Kenneth Millard. According to the records of this department the above-named person did not on 2/9/05 have a license to carry a pistol in the District of Columbia nor does he now have such a license.

8.  The Certificate of No Registration of Firearm reads:

    This is to certify that the records of the Metropolitan Police Department relating to the issuance of Firearm Registration Certificates are in my custody and control pursuant to the above-quoted directive of the Chief of Police of which I certify the foregoing is a true and accurate copy, and state that a diligent search has been made of these records for information concerning the following described person: Kenneth Millard.... According to the records of this department, t he above-named person did not on 02–09–05 have a Firearms Registration Certificate issued or pending for the below-described firearm/ammunition ... Colt .221r Semi–Auto ... Serial Number PH48169 [and] .221r 10rounds.

9.  More specifically, the Court explained, "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.... The Sixth Amendment therefore incorporates those limitations." 541 U.S. at 53–54, 124 S.Ct. 1354.

10. The Court did not define the term "testimonial," but did describe "[v]arious formulations of this core class of 'testimonial' statements" urged in the briefs of the *Crawford* petitioners and *amici* or set out in a concurrence to a prior opinion of the Court. 541 U.S. at 51, 124 S.Ct. 1354. According to the formulations that the Court quoted, "testimonial" statements include *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at later trial." *Id.* The Court "found it unnecessary to endorse any of" these formulations. *Davis, supra,* 547 U.S. at 822, 126 S.Ct. 2266.

ment." *Id.* (internal punctuation omitted). The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial'," *id.* at 68, 124 S.Ct. 1354, but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury or at a former trial; and to police interrogations," which are "the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.*[11]

Following the Supreme Court's decision in *Crawford,* this court held in *Thomas* that the DEA–7 chemical analysis report at issue in the case was "core" testimonial evidence. 914 A.2d at 12. We cited in our analysis several factors, which tracked portions of the "various formulations" that the petitioner and *amici* urged, and that the Supreme Court described, in *Crawford:* (1) that the author of the report created it "expressly for use in [a] criminal prosecution[ ]," *Thomas, supra,* 914 A.2d at 14; (2) that the report was "a formal and solemn" attestation, much like an affidavit, *id.* at

13; (3) that law enforcement officials were involved in obtaining the report, *id.* at 13–14; and (4) that the report was offered "in lieu of the chemist's live testimony to prove an essential element of the charged offense," *id.* at 13.[12]

Many of the factors that led us to conclude in *Thomas* that DEA–7 reports are testimonial weigh in favor of a similar conclusion about the CNRs in issue here. However, the CNRs are not entirely analogous to the DEA–7 report at issue in *Thomas,* and we do not believe that *Thomas,* or *Crawford,* requires us to hold that the CNRs are testimonial.

Like the DEA–7 report at issue in *Thomas,* the CNRs are formal and solemn documents that were prepared at the instance of and in response to an inquiry by law enforcement officials and were obtained expressly for use in prosecuting appellant. *Thomas* did not hold, however, that this subset of the factors it discussed is dispositive of whether a statement is testimonial.[13] And, in contrast to DEA–7

**11.** As the Court later clarified in *Davis,* statements to police "are nontestimonial when made ... under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency [and] are testimonial when the circumstances objectively indicate ... that the primary purpose ... is to establish or prove past events potentially relevant to later criminal prosecution." *Davis, supra,* 547 U.S. at 822, 126 S.Ct. 2266.

**12.** We relied on similar factors in subsequent opinions. *See, e.g., Roberts v. United States,* 916 A.2d 922, 938 (D.C.2007) (holding that DNA and serology analysis reports were testimonial because they were "created expressly for use in criminal prosecutions" by "forensic experts employed by a law enforcement agency" and were "used as substantive evidence against appellant at trial"); *see also Veney v. United States,* 936 A.2d 811, 831 (D.C.2007) (assuming that the use of a DNA test at trial without the testimony of the authoring scientist violated appellant's confrontation rights);

*Jackson v. United States,* 924 A.2d 1016, 1021 (D.C.2007) (deciding that court docket entries were non-testimonial statements because their "primary purpose ... is to meet administrative needs rather than to document facts for future prosecution" and "courtroom clerks are not law enforcement personnel").

**13.** Nor has the Supreme Court held that this subset of the "various formulations" it described in *Crawford* is dispositive of whether a hearsay statement is testimonial. See note 10, *supra.*

We note also that numerous federal and state courts have held that certificates of authenticity, which also are formal declarations often prepared for use at trial (to facilitate the admission of other documents) are non-testimonial. *See, e.g., United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir.2005) (holding that certificates of authenticity were non-testimonial even though they were "affidavits prepared for the purposes of litigation") (internal punctuation omitted). *See also United States*

reports, we think it is appropriate to regard the CNRs *not* as "substitutes for live testimony," which was how we characterized the DEA–7 report at issue in *Thomas.* 914 A.2d at 13. Rather-quite unlike DEA–7 reports-the CNRs were substitutes for carting in the entire set of MPD files memorializing the issuance of firearm registration certificates and licenses, so that the jury could determine whether a registration certificate and license had been issued in appellant's name.[14] *Cf. Polk's Lessee v. Wendell,* 18 U.S. (5 Wheat.) 293, 310–11, 5 L.Ed. 92 (1820) (holding that certificate as to non-existence of entry in public records was not competent evidence, and that production of the entire record was required, "from which the Court might, by inspection, have ascertained the fact of the non-existence of the contested entries").[15] It is this distinction that persuades us—and we now hold—that CNRs are not "testimonial" for purposes of the Sixth Amendment Confrontation Clause.

Notably, in the immigration context, where the government uses the absence of any record that an alien has been lawfully re-admitted to the United States as evidence supporting criminal prosecution for violation of an order of deportation,[16] every court to rule on the issue has concluded that CNRs are non-testimonial. *See United States v. Burgos,* 539 F.3d 641, 645 (7th

*v. Morgan,* 505 F.3d 332, 339 (5th Cir.2007) (certificate authenticating business records); *United States v. Ellis,* 460 F.3d 920, 927 (7th Cir.2006) (certificate of authenticity of hospital records, prepared at request of police); *United States v. Adefehinti,* 510 F.3d 319, 328 (D.C.Cir.2007) (certificates of authenticity of bank records); *State v. Dukes,* 38 Kan.App.2d 958, 174 P.3d 914, 916 (2008) (agreeing with courts in fourteen other jurisdictions that an affidavit verifying the maintenance and calibration of a breath test machine is nontestimonial); *State v. Jacobson,* 273 Neb. 289, 728 N.W.2d 613 (2007) (certificate confirming accuracy of police radar unit and tuning forks); *State v. Doss,* 754 N.W.2d 150, 165 (Wis.2008) (certification of bank records); *People v. Shreck,* 107 P.3d 1048 (Colo.Ct.App.2004) (affidavits authenticating prior conviction record non-testimonial); *see also Jackson, supra,* 924 A.2d at 1018 (expressing no reservations about admissibility of "certifi[cations]" attached to court records). *But see, e.g., Shiver v. State,* 900 So.2d 615, 618 (Fla.Dist.Ct.App. 2005) (affidavit of maintenance of breath-test instrument was testimonial because "the only reason the affidavit was prepared was for admission at trial"); *United States v. Wittig,* No. 03–40142JAR, 2005 WL 1227790, *2 (D.Kan.2005) (unpublished) (certificate authenticating business records held testimonial).

**14.** It might be argued that, similarly, a DEA–7 report is really just a substitute for bringing into the jury room the samples, litmus chemicals, and laboratory paraphernalia that the jury would need to discern for itself whether a substance is contraband. However, in that scenario, the jury would still need instruction from an expert about how to conduct the testing and read the test results-demonstrating that the DEA–7 report inevitably is a substitute for live testimony. By contrast, with a (non-testimonial, see note 13 *supra* ) certificate authenticating the files brought into the jury room as the complete firearm registration and licensure files, a jury would need no more instruction to be able to sift through the files to discern whether the files contain a record of a certificate or license issued to defendant.

**15.** *See also* 5 John Henry Wigmore, Evidence in Trials at Common Law § 1678(6)-(7) (James H. Chadbourn rev.1974)(explaining that the so-called "rule of completeness," rather than the principle of confrontation, animated most common law courts' exclusion of certificates of nonexistence of public records).

**16.** *See, e.g., United States v. Cervantes–Flores,* 421 F.3d 825, 831 (9th Cir.2005) (discussing an immigration-related CNR stating: "I [government records custodian], certify ... that after a diligent search no evidence is found to exist in the records of the Immigration and Naturalization Service of the granting of permission for admission into the United States after deportation of [sic] exclusion relating to ... Cervantes–Flores").

Cir.2008); *United States v. Urqhart,* 469 F.3d 745, 749 (8th Cir.2006); *United States v. Provencio–Sandoval,* 272 Fed.Appx. 683, 685 (10th Cir.2008) (unpublished); *United States v. Salazar–Gonzalez,* 458 F.3d 851, 854 (9th Cir.2006); *United States v. Cervantes–Flores, supra* note 16, 421 F.3d at 834; *United States v. Rueda–Rivera,* 396 F.3d 678, 680 (5th Cir.2005); *United States v. Mendoza–Orellana,* 133 Fed.Appx. 68, 70 (4th Cir.2005) (unpublished); *see also Jackson, supra,* 924 A.2d at 1021–22 (citing favorably *Salazar–Gonzalez, Cervantes–Flores,* and *Rueda–Rivera* ). *But see United States v. Earle,* 488 F.3d 537, 545 (1st Cir.2007) (declining to decide whether a CNR is "testimonial" evidence); *United States v. Salinas–Valenciano,* 220 Fed. App'x 879, 883, 885 (10th Cir.2007) (unpublished) (stating "we are not certain that the CNR evidence falls within the ambit of the Confrontation Clause, or that any violation could be other than harmless," but reaching no conclusion on the issue). There are relatively few reported cases in which courts have evaluated confrontation challenges to other types of CNRs, but those that have resolved such challenges generally have treated CNRs as nontestimonial. *See State v. Kirkpatrick,* 160 Wash.2d 873, 161 P.3d 990, 997 (2007) (certification of no record of driver's license); *Michels v. Commonwealth,* 47 Va.App. 461, 624 S.E.2d 675, 680 (2006) (certifications of no record of license to operate as an LLC); *Dickens v. Commonwealth,* 52 Va.App. 412, 663 S.E.2d 548, 551–52 (2008) (certification of failure to register as a sex offender); *see also State v. Shipley,* 757 N.W.2d 228, 237 (Iowa 2008) (rejecting confrontation challenge to the admission of a summary of defendant's pre-existing driving record, which a state official created after the initiation of prosecution); *Dukes, supra,* 174 P.3d at 918 (same).[17] In short, the weight of relevant authority supports our conclusion that CNRs are not testimonial.[18]

**17.** *But see People v. Niene,* 8 Misc.3d 649, 798 N.Y.S.2d 891, 893–94 (Crim.Ct.2005) (holding that city official's affidavit, swearing that, based on her search of departmental records, appellant lacked a vending license, was testimonial).

**18.** We recognize that one rationale underlying a number of the decisions we have cited above is that a CNR is, or is indistinguishable from, a business record (which *Crawford* specifically referred to as an example of a nontestimonial statement, *see* 541 U.S. at 55, 124 S.Ct. 1354). *See, e.g., Burgos, supra,* 539 F.3d at 645 ("We now conclude, in accord with this consensus, that an alien's warrant of deportation and CNR are nontestimonial business records"); *Earle, supra,* 488 F.3d at 544 ("The thrust of these cases is that CNRs are not barred by the Confrontation Clause because they closely resemble business records"); *Urqhart, supra,* 469 F.3d at 749 ("a CNR, certifying that the Form 212 does not exist, is similar enough to a business record that it is nontestimonial under *Crawford* and presents no Confrontation Clause concerns"); *Cervantes–Flores, supra,* 421 F.3d at 833 ("The CNR certifies the nonexistence of a record within a class of records that themselves existed prior to the litigation, much like business records"); *but see Salinas–Valenciano, supra,* 220 Fed.Appx. at 883 (opining that the analogy between CNR's and business records is "not entirely persuasive"). For our conclusion that CNRs are non-testimonial, we expressly do *not* adopt that rationale, which would conflict with our reasoning in *Thomas. See* 914 A.2d at 14 ("because DEA chemist's reports are created expressly for use in criminal prosecutions as a substitute for live testimony against the accused, such reports are testimonial, whether or not they happen to meet this jurisdiction's definition of a business record"). The cases we have cited do, however, support the proposition that CNRs need not be regarded as testimonial solely on the grounds that they are formal statements prepared at the instigation of law enforcement officials for use in a criminal prosecution. *See Burgos, supra,* 539 F.3d at 645 ("Although prepared in anticipation of trial, a CNR simply memorializes the contents of the Department database, maintained in the ordinary course of business-or, more particularly,

## IV.

The original indictment charged appellant with possession of cocaine with intent to distribute while armed ("PWID-WA"). During trial, Judge Leibovitz precluded the government, as a discovery sanction, from presenting certain expert testimony. Because the expert testimony was essential to the government's case on the PWIDWA charge, the court reduced the charge to one of simple possession and dismissed the PWIDWA charge. Earlier, however, before the PWIDWA charge was dismissed, the court had ruled that the defense would not be permitted, in an effort to counter the intent-to-distribute charge, to elicit testimony that police had executed a search warrant at appellant's home on the day after appellant's arrest and found no evidence of drugs or drug paraphernalia. Judge Leibovitz reasoned that whether or not appellant had such items in his home the next day was not probative of his intent to distribute on the day of his arrest, and thus not relevant. After the court dismissed the PWIDWA charge, the defense renewed its request to present evidence about the fruits of the search, proffering that the testimony would be that police "did not find anything associated with guns or drugs." Judge Leibovitz declined to change her ruling.

the *absence* of a certain sort of record in that database"); *Urquhart, supra,* 469 F.3d at 749 ("[W]hile [immigration official] Quinn created the CNR at the request of [law enforcement], the underlying subject matter-the absence of a Form 212–existed [prior to prosecution]").

In concluding that the admission of CNRs without an opportunity for cross-examination of the declarant does not violate the Confrontation Clause, some courts also have questioned the value of cross-examination in this context. *See, e.g., Salinas–Valenciano,* 220 Fed.Appx. at 883 ("It is far from clear how [cross-examination] could be of practical assistance to the defense in most cases"); *Kirkpatrick,* 161 P.3d at 998 (stating that live testimony is not "better evidence" than a CNR); *see also Weiland, supra* note 13, 420 F.3d at 1077 ("[R]equiring the records custodians and other officials ... to make themselves available for cross-examination in [ ] countless criminal cases ... would present a serious logistical challenge without any apparent gain in the truth-seeking process") (internal quotations omitted). The approach of these courts possibly is grounded in a view that CNRs prepared by government personnel are inherently more reliable than other types of hearsay statements. We think that *Crawford* does not permit us to decide the issue before us on a similar basis. *See* 541 U.S. at 66, 124 S.Ct. 1354 (reasoning that the "Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers"). The Supreme Court admonished in *Crawford* that the right of confrontation is "a procedural ... guarantee," 541 U.S. at 61, 124 S.Ct. 1354, such that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69, 124 S.Ct. 1354.

That said, we cannot fail to mention a factor that applies, perhaps uniquely, to the CNRs at issue here. We would be ignoring reality—and behaving much like the denizens in *The Emperor's New Clothes*—were we not to acknowledge that, at the time of the charged weapon offenses, "[t]he District of Columbia generally prohibit[ed] the possession of handguns." *District of Columbia v. Heller,* — U.S. —, —, 128 S.Ct. 2783, 2788, 171 L.Ed.2d 637 (2008). With very limited exceptions, no one was permitted to register a handgun or to obtain a license to carry one in the District of Columbia. Upon re-trial (if any) of appellant on the weapon charges, the objective legal landscape (the District's firearm control statutes at the time of the charged weapon offenses) will provide a virtually unassailable "indicium of [the] reliability" of the CNR declarants' statements that appellant had no registration certificate for or license to carry the Colt .22 handgun on February 9, 2005. Stated differently, in light of the broad sweep of District gun control laws that were in effect during the pre-*Heller* period, the opportunity for cross-examination with respect to the CNRs in issue here almost certainly would not be "a tool used to flesh out the truth, [but] an empty proce-

Appellant now argues that the ruling was in error as to the weapon and drug possession charges. We address this issue because, like the CNR/Confrontation Clause issue, it could arise again if the government seeks to retry appellant.

"Relevant evidence is that which tends to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence." *Brown v. United States*, 932 A.2d 521, 525 (D.C. 2007) (citation omitted). If, for example, police had discovered extra ammunition or a gun holster in appellant's home on February 10, 2005, the government could be expected to argue-with justification-that such evidence makes it likely that appellant had access to a gun and "more probable" that he possessed one on February 9, 2005, the day of his arrest. *See New York v. Quarles*, 467 U.S. 649, 657, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (recognizing that the presence of an empty holster on defendant's person strongly indicated that he had recently possessed a gun). But, we think, the converse of that argument is not true. Although if we were ruling in the first instance, we might allow the evidence, case law contains many accounts of police finding no ammunition in the homes of individuals found in possession of guns.[19] And, without straining logic or engaging in fanciful hypotheses, there are ready explanations for why an individual would be in possession of drugs without ever handling drugs or drug paraphernalia in his home.[20] A trial judge could reasonably conclude that evidence that police found no gun accessories or drug paraphernalia in appellant's home on the day after his arrest does not make it less likely that he possessed the gun found on Jasper Road or the substances found in his pocket on the day he was arrested.[21]

dure." *Crawford*, 541 U.S. at 74, 124 S.Ct. 1354 (Rehnquist, J., concurring).

19. *See, e.g., United States v. Bundoc*, 234 F. App'x 305, 306 (5th Cir.2007) (rejecting, in felon-in-possession case, appellant's argument that "the firearm could not have been used to facilitate the drug crimes because it was unloaded and no ammunition was found in the residence"); *United States v. Rios*, 449 F.3d 1009, 1016 (9th Cir.2006) ("the gun in this instance was hidden and unloaded and no ammunition was found in the apartment"); *United States v. Cannon*, 93 Fed.Appx. 60, 62 (6th Cir.2004) ("there was no ammunition in the house for the gun"); *see also United States v. Hopkins*, 128 F.Supp.2d 1, 9–10 (D.D.C. 2000) (observing that assumption by police officers who executed warrant "that one who ... has just recently carried a gun near his home is likely to have gun paraphernalia in his home" was "weakly supported"); *but see Dyer v. State*, 278 Ga. 656, 604 S.E.2d 756, 759–60 (2004) (noting, in murder case where guilty verdict reflected rejection of defendant's testimony that victim had pulled gun on defendant in victim's own apartment, that a police detective testified "that he did not find any gun case, ammunition, holster, cleaning kit, or anything else that one would normally associate with owning a gun" in victim's apartment).

20. *See, e.g., Bullock v. United States*, 709 A.2d 87, 90 (D.C.1998) (describing expert's testimony about how open-air drug enterprises tend to operate, including expert's testimony that there may be "an executive lieutenant or captain who will pass the drugs out to the street lieutenants for selling on the street") (internal punctuation omitted); *Rivas v. United States*, 783 A.2d 125, 152 (D.C.2001) (describing expert testimony that appellant's movements were "consistent with the role of runner," in that he "was observed approaching vehicles, receiving money, going to another party making hand-to-hand contact, then to another from which he received a small white object that he in turn gave to the driver of the vehicle") (internal quotation marks omitted).

21. We review a trial court's ruling on the relevance of proffered testimony for abuse of discretion. *See Brown, supra*, 932 A.2d at 524 ("We entrust a decision of evidentiary relevance to the trial court's discretion, to which we owe substantial deference; we will overturn it only on a showing of abuse of discretion").

## Conclusion

For the foregoing reasons, we vacate appellant's convictions. In the event the government retries appellant, the trial court is not precluded from admitting into evidence, without testimony by the individual who searched the MPD's firearm licensure and registration records, certificates of no record that appellant possessed a firearm registration certificate or a license to carry a firearm on February 9, 2005. The court may also exclude evidence that police found no gun or drug paraphernalia when they searched appellant's home on February 10, 2005.

*So ordered.*