**STATE of Minnesota, Respondent,**

v.

**Mpatanishi Syanaloli TAYARI–GARRETT, Appellant.**

No. A12–1915.

Court of Appeals of Minnesota.

Jan. 13, 2014.

Lori Swanson, Attorney General, St. Paul, MN, and Sara R. Grewing, St. Paul City Attorney, Stephen J. Christie, Assistant City Attorney, St. Paul, MN, for respondent.

Mpatanishi Syanaloli Tayari–Garrett, Dallas, TX, pro se.

Considered and decided by KIRK, Presiding Judge; SMITH, Judge; and HARTEN, Judge.*

## OPINION

KIRK, Judge.

Appellant Mpatanishi Syanaloli Tayari–Garrett, an attorney, proceeded pro se

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

during her jury trial on a charge of criminal contempt for failing to appear for trial. Although appellant invoked her Fifth Amendment privilege against self-incrimination, she effectively waived this privilege when she persistently testified while not under oath during her opening statement, closing argument, and examination of witnesses. Because of her waiver, we conclude that the prosecutor did not violate appellant's privilege when he told the jury that her unsworn testimony was not evidence to be considered during deliberations. Appellant also raises several other arguments that do not have merit. We affirm.

## FACTS

In October 2010, appellant was hired to represent E.M.M., who was charged with theft by swindle in a $2.8 million mortgage fraud scheme. Appellant is an experienced criminal defense attorney who practices in both Texas and Minnesota. The case involved multiple defendants and was one of the largest cases that the complex crime division of the Hennepin County Attorney's Office brought to trial in 2011. The district court set aside two weeks for the trial.

On January 25, 2011, after a pretrial scheduling conference, the district court issued a scheduling order that stated, "[B]ased upon discussions with counsel at that hearing, ... [t]he trial remains set for May 2, 2011, and will be given trial priority unless the Court is assigned and required to hear any other criminal matter with a speedy trial demand." Appellant did not raise any scheduling conflicts at this conference and agreed to a trial date of May 2. Two subsequent orders filed in February and March reiterated a trial start date of May 2.

Less than three weeks before the trial date, appellant filed a motion for a continuance based on several grounds, including a personal conflict due to a family wedding in Europe. Before the district court had a chance to hear appellant's motion, she purchased non-refundable airline tickets from Dallas, Texas to Paris, France for May 4 through 9.

In an April 22 order, the district court denied appellant's motion, stating: "The trial day certain for this case is May 2, 2011." Appellant next filed a motion to remove the district court judge from the case, but the chief judge denied her motion. On April 29, appellant renewed her motion for a continuance and e-mailed the district court judge's law clerk, stating that she was "incompetent counsel" because she had not had adequate time for discovery or to prepare for trial.

On May 2, all parties, including E.M.M. and the 15 subpoenaed witnesses, were present to begin trial, but appellant was absent. Attorney Larry Frost appeared on appellant's behalf as substitute counsel and informed the court that he had spoken to appellant on May 1 and she informed him that she was hospitalized in Dallas. Frost stated that he had no knowledge of appellant's medical issue or prognosis, and requested a continuance of the trial on appellant's behalf due to her illness. The district court ordered appellant to submit to the district court three pieces of evidence by the end of the day: (1) documentation of admission to the hospital; (2) a prognosis from her doctor as to when she would be able to travel to Minneapolis; and (3) documentation of her travel plans to travel to Minneapolis to appear before the district court on May 2. Thomas Sinas, the prosecutor for the state, moved the district court to order appellant to show cause why she should not be held in contempt of court, but the district court declined to rule on the motion until more information was presented on appellant's

medical condition. The district court stated that the trial would be continued on a day-to-day basis until it could be tried.

On May 3, the district court held a follow-up hearing. Appellant was absent. Frost informed the district court that he had spoken with appellant and she said she was staying overnight at the hospital for additional tests, but once she received a formal prognosis she would forward that information to the district court. Frost said appellant told him that she could not provide any evidence to the district court of her travel plans for the May 2 trial date because she had intended to drive to Minneapolis. The district court continued the hearing until May 5 for another status conference to learn more about appellant's prognosis. Later that afternoon, appellant sent the district court judge's law clerk an e-mail stating that she had been released from the hospital, but would not be able to attend the May 5 hearing as it was "[t]oo soon." Appellant stated that she would be available to attend a status conference regarding the trial on May 16.

About 45 minutes later, the law clerk e-mailed both appellant and Sinas an order stating that the district court had stayed a motion for an order to show cause pending appellant's production of the required documentation of her hospitalization, prognosis, and travel plans. Absent appellant producing this information, the district court believed the state had shown good cause for its request. The district court gave appellant until noon on May 4 to provide the three pieces of documentation and reiterated that the trial remained set on a day-to-day basis. The e-mail order also informed appellant of the May 5 hearing.

During the morning of May 4, appellant e-mailed the law clerk in response to the May 3 e-mail order. Appellant again suggested continuing the trial until May 16 because she was waiting for the doctor to confirm the date of her follow-up appointment. Appellant wrote, "Given the clarification the court is handling this matter day-by-day, I may be able to begin making travel plans after my follow-up appointment next week." Appellant stated that she was presently in Dallas, but could appear by telephone for the May 5 hearing. Appellant attached a heavily redacted document from a hospital in Dallas to her e-mail indicating that she had been hospitalized overnight May 2 to 3.

On the morning of May 5, the district court held another status hearing where the law clerk contacted appellant by calling the phone number for her receptionist at her law office in Dallas. The receptionist connected the law clerk's phone call to appellant. Appellant never mentioned to the district court that she was in Paris.

At the hearing, the district court expressed its frustration about appellant's failure to provide the documentation required in the May 3 order, and indicated that it was considering all remedies, including removing her from the case. Appellant stated that she had not provided the district court evidence of her prognosis because she was still waiting to receive it from the doctor, but she was "ready to go" and felt "a hundred times" better. The state again moved the district court to find appellant in constructive criminal contempt of court because she did not appear for trial on May 2. The district court stated that it would hold an evidentiary hearing on the state's contempt motion on May 9 due to appellant's failure to provide the required documentation. Appellant stated that she could not appear in Minneapolis on May 9 because she had a follow-up medical appointment. The district court ordered her to appear by phone for the May 9 evidentiary hearing, and appellant agreed.

Later that day, the district court amended its oral order allowing appellant to appear by phone on May 9 after learning that an individual charged with constructive contempt "must be investigated by examining the person and the witnesses for or against the person charged." *See* Minn.Stat. § 588.09 (2012). To conduct a proper examination of appellant, the district court ordered her to appear in person at the May 9 hearing. The law clerk e-mailed the amended order to appellant on May 5 using the same e-mail address that she had used for all previous correspondence.

On May 9, the district court held appellant's contempt hearing, but appellant was not present and did not appear by phone. Rick Petry, a criminal defense attorney who had been retained to represent appellant, appeared by phone. Petry stated that he could substitute as defense counsel for E.M.M. The district court reiterated that appellant had failed to produce the required documentation and continued the hearing until May 11. Appellant again failed to appear for the May 11 hearing, and E.M.M. discharged appellant from representing her in the mortgage fraud case and retained Petry as counsel.

On May 5, an investigator in the fraud investigation unit of the Hennepin County Attorney's Office, with the assistance of the Department of Homeland Security and the Hennepin County Sheriff's Office, began investigating appellant's whereabouts and learned about the airline tickets appellant had purchased in April from Dallas to Paris. The investigators obtained a video depicting appellant at the Minneapolis airport on May 4 walking from an arrival gate for a flight from Dallas to a departure gate for a flight to Paris. He also obtained evidence that, on May 9, appellant was on a flight manifest for a flight from Amsterdam, the Netherlands, en route to Dallas, and that she completed a customs form in Dallas.

On May 25, the district court issued an order finding probable cause that appellant was in constructive contempt of court as defined by Minn.Stat. § 588.01, subd. 3 (2012). In its memorandum, the district court stated that Minnesota law provides that anyone charged with constructive criminal contempt "may not be punished summarily, but [is] allowed procedural safeguards, including a complaint detailing the charge and a right to a jury trial." The district court referred the matter to the Hennepin County Attorney for investigation.[1]

In October 2012, appellant was tried by a jury for committing the offense of misdemeanor criminal contempt under Minn. Stat. § 588.20, subd. 2(4) (2012). During the trial, appellant acted as her own counsel and did not testify. In her opening statement, appellant went on at length about her background, her legal experience, and how she fights for justice. The following is a sample of her statement:

> My reputation of truthfulness and honesty is at issue today.
>
> . . . .
>
> You will learn ... through the testimony and evidence that [appellant] eventually makes a life-changing decision to leave the comforts of working for a large law firm and representing large corporations to move to Texas and start her own business, her own law firm, where she focuses on helping individuals, those people that cannot speak for themselves.

1. The district court acted appropriately when it refrained from immediately punishing appellant and transferred the case to the prosecuting authority as she was facing sanctions, including jail time, under Minn.Stat. § 588.10 (2012).

And there in Texas people come to her from all walks of life for her help.... [S]he gets a weekly legal talk show on Vietnamese radio, where she helps to make sure that this community knows their rights. She is also on gospel radio and meets people from all walks of life through her internet advertisements.

No evidence introduced at trial supported this character evidence. Appellant also introduced many facts that were not properly before the jury through her questioning of witnesses. For example, during appellant's cross examination of a witness about her failure to phone the district court for the May 9 hearing, appellant asked him, "Would it surprise you to learn that the court can only do one telephone line or one telephone conference at a time, so several attorneys can't call in all at once?" Appellant later asked him, "Would it surprise you to learn that I was actually detained for the first time in my life when I arrived in Dallas, Texas?" There was no evidence presented at trial to substantiate any of the underlying facts in appellant's questions to the witness.

In her closing argument, appellant told the jury that the district court judge and Sinas colluded with one another to fabricate criminal contempt charges against her. In her closing statement, appellant stated the following:

And I submit to you, ladies and gentlemen of the jury, that it is part of that plan that started when someone's feelings got hurt. Let's start putting something together. Let's start setting her up. This is the perfect opportunity. This is—[t]his is how we're going to do it. This is how we're going to get her. And what's interesting, ladies and gentlemen of the jury, is that there were a couple of times where I appeared over the telephone. Even before this, there were a couple of other meetings where we had telephone conferences. And it was always just kind of nagging on me that the judge would say something over the phone—I'm on the phone, Tom Sinas is there in the judge's chambers. He would say something over the phone. He would make a decision over the telephone, but then when he got off of the phone, he would write an order that's completely different from what we talked about. It—It always kind of bothered me.

. . . .

And so after this May 5th telephone conference where the judge tells me, "Just appear by phone on [May 9]. Counsel can appear by phone." After he tells me that over the phone, and after I rely on that, a couple of hours later this order comes out. It's time stamped 5:00 p.m. And it says, "[Appellant] has to be here in person at ten o'clock a.m."

Now, think about it, a couple of hours passes. That's the time period when Tom Sinas asked the investigator to get the specific—specific dates and times of my travel plans. So, now they know what time I'm coming in and now they want to make sure that, yeah, we can get her, we can find her in contempt. We can get her.

There was no evidence introduced at trial that the district court judge and Sinas acted improperly against appellant other than her own unsworn statements to the jury during her closing argument. The jury later found appellant guilty of criminal contempt. The district court ordered appellant to pay a $1,000 fine and sentenced her to 90 days in jail, stayed for one year. The district court also ordered appellant to comply with requests made by

the Minnesota Board of Professional Responsibility.

This appeal follows.

### ISSUES

1. Did the prosecutor improperly comment on appellant's failure to testify?

2. Do appellant's remaining arguments have merit?

### ANALYSIS

**I. The prosecutor did not improperly comment on appellant's failure to testify.**

"When reviewing objected-to alleged prosecutorial conduct, we have utilized a harmless-error test, the application of which varies based on the severity of the misconduct." *State v. Carridine,* 812 N.W.2d 130, 146 (Minn.2012). It is not clear that this two-tiered approach for objected-to prosecutorial misconduct announced in *State v. Caron,* 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974), remains viable after the supreme court decided *State v. Ramey,* 721 N.W.2d 294, 301 (Minn.2006), which adopted a modified plain-error analysis for unobjected-to prosecutorial misconduct. Regardless, appellant must first establish that the prosecutor engaged in misconduct.

 Appellant contends that the prosecutor committed serious misconduct when he repeatedly made references to her failure to take the witness stand. This court must first examine the challenged conduct to ascertain whether the prosecutor committed misconduct. *State v. Ford,* 539 N.W.2d 214, 228 (Minn.1995). The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *State v. Borg,* 806 N.W.2d 535, 541 (Minn.2011). "A defendant who does

not testify at trial has a right not to have anyone in the courtroom use his silence against him." *McCollum v. State,* 640 N.W.2d 610, 617 (Minn.2002) (citing *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965)). A prosecutor may not directly or indirectly comment upon a defendant's failure to testify or invite the jury to draw an adverse inference from her failure to do so. *State v. Porter,* 526 N.W.2d 359, 365 (Minn.1995) (holding that prejudicial remarks including those commenting on defendant's failure to put on a defense or testify require a new trial).

In closing argument, the prosecutor made the following remarks:

> So, what is evidence? Evidence are the documents and the videotape that was received in this case. Evidence is what people say under oath when they sit at the witness stand—(Counsel indicating stand)—and answer questions.

> You know what is not evidence? The questions of attorneys are not evidence. Did you know this? Did you know that? Did you know that I was detained at the Dallas Airport for the first time in my life? You know what? We don't know if she was detained. She probably was detained....

> . . . .

> ... Those tears were real. That probably happened. But that's not evidence. That's not for you to consider. [Appellant] was never there. She had no obligation to be there. But when you think about it, what do I know about [appellant]? And what did she tell me? You have to think about it. Do I know that because I learned it from over there [pointing to the witness stand] or I learned it from over there [pointing to the well of the courtroom], or did I learn

it from over there [pointing to appellant's table]?

She told you a lot of stuff from here [pointing to appellant's table]. She told you a lot of stuff from there [pointing to the well of the courtroom]. But you can't consider that as evidence in making your decision.

■ We do not believe the prosecutor committed misconduct when he made these statements. Here, appellant used her position as a pro se defendant to repeatedly testify to the jury about evidence that was never properly before the court while avoiding the scrutiny of cross-examination. A review of the trial transcript confirms that appellant repeatedly testified to the jury without first being sworn under oath. Acting as her own counsel, appellant was in the unique position of arguing her own defense in the first person while at the same time invoking her Fifth Amendment right not to testify.

■ The privilege against self-incrimination may be waived. *State v. Hanson*, 285 N.W.2d 487, 489 (Minn.1979) (citing *Garner v. United States*, 424 U.S. 648, 656, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976)). A defendant who voluntarily testifies waives the privilege against self-incrimination. *State v. Spurgin*, 358 N.W.2d 648, 651 (Minn.1984).

Although there are no Minnesota cases that address this issue, other courts have found that a pro se defendant effectively waives Fifth Amendment protection by testifying while not under oath to matters not properly in evidence, thereby allowing the prosecutor to comment on defendant's unsworn testimony and at the same time inform the jury that the testimony cannot be cross examined. *See Bontempo v. Fenton*, 692 F.2d 954 (3d Cir.1982); *Redfield v. United States*, 315 F.2d 76 (9th Cir. 1963); *United States ex rel. Miller v. Follette*, 278 F.Supp. 1003 (E.D.N.Y.1968),

*aff'd*, 397 F.2d 363 (2d.Cir.1968); *Porterfield v. State*, 522 So.2d 483 (Fla.Dist.Ct. App.1988); *Booth v. State*, 306 Md. 172, 507 A.2d 1098 (1986), *vacated on other grounds*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *Jones v. State*, 381 So.2d 983 (Miss.1980); *State v. Schultz*, 46 N.J. 254, 216 A.2d 372 (1966); *State v. Polk*, 5 Or.App. 605, 485 P.2d 1241 (1971); *State v. Johnson*, 121 Wis.2d 237, 358 N.W.2d 824 (Ct.App.1984). We conclude that appellant effectively waived her privilege against self-incrimination through her repeated unsworn testimony before the jury, and the prosecutor did not violate her constitutional privilege when he reminded the jury that her unsworn testimony was not evidence to be considered in deliberations. We do not find appellant's comments to be so egregious that the state could have compelled her to take the witness stand and submit to cross-examination, but they came very close. The state's measured response was appropriate to these circumstances. Having opened the door to the prosecutor's argument, appellant can hardly complain now.

## II. Appellant's remaining arguments do not have merit.

Appellant's remaining challenges are either without merit or are harmless error because of the overwhelming evidence of appellant's guilt.

### A. The prosecutor did not engage in misconduct.

Appellant argues that the state improperly called Sinas as a witness because he was clearly biased against her. But the trial record demonstrates that appellant had the opportunity to thoroughly attack Sinas's credibility as a witness and introduce any evidence of his bias, prejudice, or interest to the jury under Minn. R. Evid. 616.

Appellant contends that the prosecutor improperly attempted to strike potential jurors who were minority immigrants, the jury panel did not reflect the strikes she made, and the district court conducted the strikes in front of the jury panel, thus denying her due process rights. "No party may purposefully discriminate on the basis of race or gender in the exercise of peremptory challenges." Minn. R.Crim. P. 26.02, subd. 7(1). All proceedings relating to an objection to a peremptory challenge on the grounds of purposeful racial or gender discrimination must be on the record. *See* Minn. R.Crim. P. 26.02, subd. 7(2); *Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Any party may object to a peremptory challenge on the ground of purposeful racial or gender discrimination, and the objection and all arguments must be made out of the hearing of all prospective or selected jurors. Minn. R.Crim. P. 26.02, subd. 7(2).

A review of the trial record shows that appellant never made a *Batson* challenge. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996). "The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R.Crim. P. 28.02, subd. 8.

■■■ Appellant argues the prosecutor improperly called her a liar although she never testified. After reviewing the trial record, we find no evidence supporting appellant's claim that the prosecutor called her a liar in his leading questions to witnesses and in closing argument. *See State v. Pilot,* 595 N.W.2d 511, 518 (Minn.1999). Additionally, none of the prosecutor's comments during closing argument, including that E.M.M. "wanted her day in court" or that appellant failed to fulfill her ethical obligations under the Minnesota Rules of Professional Responsibility, were unduly prejudicial. When assessing alleged prosecutorial misconduct during summation, we consider the closing argument as a whole. *State v. Johnson,* 616 N.W.2d 720, 728 (Minn.2000). Lawyers should not use inflammatory comments designed or likely to arouse the passions or biases of jurors, and these will be closely scrutinized for prejudice. *Porter,* 526 N.W.2d at 363.

For example, during closing the prosecutor appropriately referred to the evidence presented at trial that showed E.M.M. repeatedly appeared before the district court to see if appellant would show up and represent her at trial. It was wholly reasonable for the jury to believe E.M.M. was forced to wait and endure the stressful uncertainty caused by appellant's absence. There was evidence presented at trial that appellant had a duty of candor to the tribunal and an obligation to provide competent representation to her client, which included showing up for all court appearances and informing the district court that she was in Paris. Minn. R. Prof. Conduct 1.1, 3.3. Finally, the prosecutor made an unartful analogy that appellant had a duty, like a probationer, to request permission from the district court before she went on vacation on May 2 because of the previously scheduled trial. If there was any error here, it could not have influenced the jury in reaching its verdict given the overwhelming evidence of appellant's guilt.

## B. The evidence was sufficient to support the jury's verdict.

■■■ In considering a claim of insufficient evidence, this court's review is limited to a thorough analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989).

"In conducting this review, the court assumes the jury believed the state's witnesses and disbelieved evidence to the contrary. The jury determines the credibility and weight to be given the testimony of witnesses." *State v. Buchanan*, 431 N.W.2d 542, 547 (Minn.1988) (citations omitted). This court applies heightened scrutiny whenever an element of an offense is proven by entirely circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 606 (Minn.2013) (Stras, J., concurring in part) (citing *State v. Al–Naseer*, 788 N.W.2d 469, 473 (Minn.2010) (holding that in order for a fact to be proven by circumstantial evidence, we consider whether the reasonable inferences that can be drawn from the circumstances proved support a rational hypothesis other than guilt)).

Appellant argues that there was insufficient evidence for the jury to find she willfully disobeyed a court order to appear for trial on May 2 and the days following, because she was involuntarily hospitalized in Dallas. But the jury could infer appellant's willful intent as there was no evidence in the record that appellant was hospitalized in Dallas on May 1 as she claimed in her conversation with Frost, or that she was involuntarily hospitalized. Appellant failed to provide the district court with any evidence of her prognosis during the days the district court was attempting to try the case. Moreover, appellant's hospitalization and alleged illness did not preclude her from traveling to Minnesota, as she arrived on May 4 at the Minneapolis–St. Paul international airport en route to Paris.

Appellant argues that there was no evidence she disobeyed a mandate because May 2 was not properly set as a date certain by the district court's January 25, 2011 scheduling order. Here, the jury could infer from the testimony of several witnesses who were attorneys that a "date

certain" means the lawyers will try the case on that particular day because there are no other matters before the judge. Moreover, the jury could infer from the district court's April 22 order denying appellant's motion for continuance that there was no doubt the mortgage fraud case would be tried on May 2.

Appellant contends there was no evidence that she received notice to appear for her contempt hearing, and the prosecutor failed to produce an affidavit outlining the contempt charges to the district court under Minn.Stat. § 588.04 (2012). But appellant was charged with criminal contempt under Minn.Stat. § 588.20, subd. 2(4), and was entitled to the right to counsel, the right to a jury trial, and a written complaint. *In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn.App.1987). The evidence shows that the district court provided these protections to appellant.

Appellant argues there was no evidence presented at trial that she was a party to the scheduling order requiring her to appear for trial. The language of Minn.Stat. § 588.20, subd. 2(4), states that a person commits a contempt of court through willful disobedience to the lawful process or other mandate of a court. Here, there was overwhelming evidence, in numerous scheduling orders and motions, that appellant was expected by the district court to appear on May 2 to represent her client at trial, which she failed to do. Finally, we note that because we find there was sufficient evidence to support the verdict of guilt beyond a reasonable doubt, it is unnecessary to address appellant's probable cause challenge. *See State v. Voorhees*, 596 N.W.2d 241, 254 (Minn.1999) (stating that the fact that defendant was found guilty by the petit jury confirms that probable cause existed as to his guilt).

## C. Appellant waived her right to an attorney.

 "We will only overturn a finding of a valid waiver of a defendant's right to counsel if that finding is clearly erroneous." *State v. Jones,* 772 N.W.2d 496, 504 (Minn.2009) (quoting *State v. Worthy,* 583 N.W.2d 270, 276 (Minn.1998)) (quotation marks omitted).

 Appellant argues that the district court failed to make a minimal inquiry into her ability to represent herself at trial and secure a written waiver under Minn.Stat. § 611.19 (2012). Appellant was charged with a misdemeanor offense, and the district court did not err when it held that she knowingly and intelligently waived her right to counsel as it properly secured appellant's waiver of counsel on the record. *See* Minn. R.Crim. P. 5.04, subd. 1; *State v. Nelson,* 523 N.W.2d 667, 670–71 (Minn. App.1994) (holding oral waivers of counsel on the record satisfy the requirements of Minn.Stat. § 611.19).

## D. Appellant's right to confrontation was not violated.

 Whether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law that appellate courts review de novo. *State v. Caulfield,* 722 N.W.2d 304, 308 (Minn.2006). Both the United States and Minnesota Constitutions guarantee a defendant the right "to be confronted with the witnesses against him." U.S Const. amend. VI; Minn. Const. art. I, § 6. The right to confrontation is violated if testimonial hearsay statements are admitted into evidence, unless the declarant is unavailable and the defendant has had a prior chance to cross-examine the witness. *Caulfield,* 722 N.W.2d at 308 (citing *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004)). The state bears the burden to establish that the challenged statements are not testimonial. *Id.*

Appellant argues that under the Confrontation Clause of the Sixth Amendment of the United States Constitution, she had the right to cross-examine the district court judge because the orders he issued included testimonial statements that were admitted in the jury trial over her objection.

 Whether a record is testimonial depends on whether it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *State v. Vonderharr,* 733 N.W.2d 847, 852 (Minn.App.2007) (quotation omitted) (holding department of safety records not testimonial because (a) not prepared for the purpose of prosecution, (b) prepared before charges were filed, and (c) prepared before incident leading to charges). Here, the orders issued by the district court are not testimonial as they merely reflected the status of the E.M.M. case when appellant failed to appear to represent her client. The orders were drafted before the state first requested that the district court hold her in constructive contempt and before charging her with criminal contempt. The orders were not created for the purpose of criminally prosecuting appellant. Even if they were used in prosecution, that "does not mean that they were created for that purpose." *Id.* at 853.

## E. Appellant waived her challenge to the constitutionality of Minn. Stat. § 588.20, subd. 2(4).

 Appellant argues that Minn. Stat. § 588.20, subd. 2(4), is unconstitutionally vague. Appellant failed to raise this issue before the district court. Generally an appellate court will not consider mat-

ters not argued to and considered by the district court. *Roby,* 547 N.W.2d at 357.

## DECISION

Appellant waived her constitutional privilege against self-incrimination by repeatedly and voluntarily making unsworn testimonial statements. Because of that waiver, the prosecutor did not violate appellant's privilege when he told the jury that her unsworn testimony was not evidence to be considered during deliberations. We further conclude that appellant's remaining arguments do not have merit.

**Affirmed.**