*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1623**

State of Minnesota,
Respondent,

vs.

Derrick Deshawn Shumpert,
Appellant

**Filed August 4, 2014
Affirmed
Toussaint, Judge**[*]

Olmsted County District Court
File No. 55-CR-10-304

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Larkin, Judge; and

Toussaint, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**TOUSSAINT**, Judge

Appellant challenges his convictions of first-degree controlled substance crime and conspiracy to commit first-degree controlled substance crime, arguing that the district court erred by refusing to suppress evidence discovered during an unlawful search and seizure and by precluding a defense witness from testifying.[1] We affirm.

## DECISION

## I.

Appellant Derrick Deshawn Shumpert argues that the warrant issued authorizing a search of his residence, automobile, and person was defective because it was not based on probable cause and the information supporting the warrant was stale. The district court denied his motion to suppress evidence discovered during the search.

Both the federal and state constitutions prohibit unreasonable searches and "demonstrate[ ] a strong preference for searches conducted pursuant to the authority of a warrant." *State v. Rochefort*, 631 N.W.2d 802, 805 (Minn. 2001) (quotation omitted). The purpose of the warrant requirement is to interpose between police officer and suspect a neutral magistrate, who will independently assess the inferences to be drawn from the available evidence. *Id.*

---

[1] On appeal, Shumpert alleges that his constitutional rights were violated by a lengthy pre-indictment delay. Because Shumpert did not raise this issue before the district court, we decline to address it. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (refusing to address issues not raised before district court, "including constitutional questions of criminal procedure"); *State v. Tayari-Garrett*, 841 N.W.2d 644, 653 (Minn. App. 2014) (same), *review denied* (Minn. Mar. 26, 2014).

A search warrant may be issued upon a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art I, § 10. Probable cause for a search warrant exists when the application for the warrant "contain[s] information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched." *State v. Gail*, 713 N.W.2d 851, 858 (Minn. 2006). When an appellate court reviews the district court's determination that there is probable cause to issue a warrant, it is limited to considering "whether the issuing judge had a substantial basis for concluding that probable cause existed." *Rochefort*, 631 N.W.2d at 804. This deferential standard encourages the use of a warrant. *Id.* at 805.

Shumpert argues that there was insufficient probable cause for the search warrant because no direct evidence tied him to an actual drug purchase. The warrant application contained the following information: (1) Rochester police officer Jeffrey Sobczak was working with a confidential informant (CI) to target a suspected drug dealer, David Valdez; (2) Sobczak and the CI set up a controlled buy with Valdez; (3) Valdez took the buy money from the CI, entered Shumpert's residence, and returned within a few minutes with cocaine; (4) during a second controlled buy, Valdez told the CI that the supplier would come to the Home Depot parking lot in a black Aurora automobile; (5) police watching Shumpert's residence saw a black Aurora leave Shumpert's residence within a few minutes after Valdez and Gomez arrived at Home Depot; (6) the Aurora arrived at Home Depot and Valdez got into the car with the buy money; (7) Valdez returned from the Aurora with drugs; (8) Sobczak, who was in the Home Depot parking lot, recognized Shumpert as the driver and sole occupant of the Aurora; (9) the CI told Sobczak that he

met a man called "B," at Valdez's residence three days before the second buy; this man told the CI that he would not sell him drugs directly but that he should continue to go through Valdez; the CI recognized Shumpert as the person he met at Valdez's residence; and (10) Shumpert had a prior conviction for sale of a controlled substance. This is sufficient evidence to provide probable cause for a warrant to search Shumpert's residence, car, and person.

Shumpert argues that the CI was not shown to be a credible or reliable informant. Generally, an informant must be shown to be credible and informed before police can rely on an informant's tip to establish probable cause. *State v. Wiley*, 366 N.W.2d 265, 268-69 (Minn. 1985); *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008). But here the allegations in the warrant application are not based solely on information from an informant, but instead there was independent corroboration: police overheard the drug transactions, because the CI was wearing an audio wire, and visually observed the transactions; the CI was searched before and after each transaction and was provided with photocopied money; police observed Valdez enter Shumpert's residence, and saw the Aurora leave Shumpert's residence; and Sobczak personally identified Shumpert as the driver and sole occupant of the Aurora. This is not the equivalent of an anonymous, unverified tip.

Shumpert argues that the warrant application contained misstatements. He alleges that the CI stated that Valdez carried drugs on his person, but there is nothing in the record that supports this statement. He also argues that one officer reported that the suspect was wearing a light-colored parka and all witnesses agreed that Shumpert was

4

wearing a black parka with silver decoration. But Sobczak positively identified Shumpert by face, after having refreshed his memory with a photograph; he did not identify Shumpert by his parka.

Finally, Shumpert argues that the information was stale. Staleness is "determined by the circumstances of each case"[;]a court must use "flexibility and common sense" when assessing whether a warrant is stale. *State v. King*, 690 N.W.2d 397, 401 (Minn. App. 2005), *review denied* (Minn. Mar. 29, 2005). "The passage of time is less significant when an activity is of an ongoing, protracted nature." *Id.* Here, the search warrant was executed within two days after the second controlled buy. Between January 28, the date of the first buy, and February 5, the date of the execution of the search warrant, the CI participated in two controlled buys, met Shumpert at Valdez's house, and had a conversation with him about purchasing drugs. The evidence here suggests that Shumpert was engaged in an ongoing series of transactions, and, therefore, the warrant was not stale. The district court here had a substantial basis for believing that there was probable cause for a search warrant.

## II.

Shumpert argues that his arrest was unlawful because police did not have an arrest warrant, despite having had time to obtain a search warrant, and there was insufficient probable cause to support a warrantless arrest. An appellate court reviews whether a search or seizure is justified by probable cause de novo; the district court's findings are reviewed for clear error. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). "The question of the legality of the arrest turns not on the reasonableness or practicality of

5

obtaining a warrant, but on the reasonableness of the arrest." *State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997). A peace officer may make a warrantless arrest in a public place when a felony has been committed and the peace officer has probable cause to believe that the person arrested committed the felony. *State v. Walker*, 584 N.W.2d 763, 766 (Minn. 1998); *State v. Merrill*, 274 N.W.2d 99, 108 (Minn. 1978). "Probable cause to arrest a suspect exists when the objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State v. Dickey*, 827 N.W.2d 792, 796 (Minn. App. 2013) (quotation omitted).

Several circumstances support a finding of probable cause to arrest: (1) police were executing a search warrant, issued on probable cause that Shumpert would have drugs or evidence of narcotics sales on his person; (2) police had monitored two controlled buys; in the first transaction, Valdez acquired the drugs during a brief visit to Shumpert's residence; during the second, Sobczak recognized Shumpert as the driver and sole occupant of the car from which Valdez obtained the drugs; (3) the CI spoke with Shumpert, who implied that he was Valdez's source of drugs; and (4) at the time of his arrest, Shumpert was driving the car that had been used during the second transaction. These are sufficient objective facts to support an "honest and strong suspicion" that Shumpert had committed a crime; therefore, police had probable cause to make a warrantless arrest in a public place.

### III.

Shumpert argues that the district court abused its discretion by excluding a defense witness's testimony because the name of the witness and the subject matter of her testimony were not disclosed until the eve of trial. Although a criminal defendant has "the right to call and examine witnesses, subject to the limitations imposed by the rules of evidence[,] . . . evidentiary rulings rest within the sounds discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Hanks*, 817 N.W.2d 663, 667 (Minn. 2012) (citation and quotation omitted). The appellate court defers to the district court's decision and "will not lightly overturn a district court's evidentiary ruling." *Id.*

Both prosecution and defense counsel are obligated to disclose the names of witnesses to be called at trial. Minn. R. Crim. P. 9.01, subd. 1(1)(a) (prosecution); 9.02, subd. 1(3) (defense). The district court may order sanctions for failure to comply with a discovery rule. Minn. R. Crim. P. 9.03, subd. 8. The district court may prohibit a witness from testifying, although this is a "severe sanction which should not be lightly invoked." *State v. Patterson*, 587 N.W.2d 45, 50 (Minn. 1998). When determining an appropriate sanction for nondisclosure of a witness, the district court should consider: (1) the reason for nondisclosure; (2) the extent of the prejudice to the other party; (3) whether a continuance would ameliorate the prejudice; and (4) any other relevant factor. *Id.*

The district court considered these factors before excluding the witness's testimony. Defense counsel knew of the witness, who lived in Georgia, but did not decide to call her as a witness until she spoke to her shortly before trial. Shumpert argues

7

that because this was his second attorney, she did not have enough time to prepare, but defense counsel filed a certificate of representation almost five months before trial. The district court noted that defense counsel made "exhaustive" motions and stated that it was "hard pressed to think that this is some new revelation from your client . . . that you could not investigate [until] a few days prior to trial." In short, the district court discounted defense counsel's reason for the delay.

The district court concluded that the state would be prejudiced by the late notification. The witness had a record of arrests but it was not clear if she had convictions; some of the arrests were for crimes of dishonesty. The short notice of intent to call the witness prevented the state from fully investigating her background. Defense counsel stated that the witness would testify that she often sent Shumpert large sums of cash, as an explanation for the $4,500 discovered on his person during his arrest; the prosecutor stated that he would be unable to verify bank or transfer records in such a short time.

The district court also was reluctant to grant a continuance because the case was already four years old. Although some of the lapsed time was due to a pre-charging delay of 11 months and a state witness's pregnancy, much of the delay was attributable to Shumpert and his defense counsels.

Finally, Shumpert claimed during his arrest that he received "money from girls on the side," as an explanation of the large amount of cash found on his person. The defense was known and could have been explored early in the investigation. At trial, defense counsel was able to introduce this defense through the testimony of Shumpert's

girlfriend, who testified that Shumpert received money from "other girls on the side" and that she saw thousands of dollars of transfers. Based on the age of the case, the lack of a good reason for the delay, and the prejudice to the state, the district court's decision to exclude the witness's testimony was not an abuse of discretion.

**IV.**

In his pro se supplemental brief, Shumpert challenges the testimony and the credibility of witnesses. We defer to the fact-finders' assessment of credibility. *State v. Porte*, 832 N.W.2d 303, 308-09 (Minn. App. 2013). Further, we generally do not consider pro se claims not supported by argument or legal authority. *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008).

**Affirmed.**