*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0083
A14-0896**

State of Minnesota,
Respondent,

vs.

David Lamar Everett,
Appellant,

and

David Lamar Everett, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed December 8, 2014
Affirmed
Larkin, Judge**

Hennepin County District Court
File Nos. 27-CR-12-19417; 27-CV-12-3784

Lori Swanson, Attorney General, Elizabeth Oji, Jacob C. Fischmann, Assistant Attorneys General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Sarah Becker, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Melvin R. Welch, Welch Law Firm, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hudson, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**LARKIN**, Judge

In this consolidated appeal, appellant challenges his criminal conviction of refusal to submit to a chemical test and the civil revocation of his driving privileges. Appellant argues that the test-refusal statute is unconstitutional and that the district court's jury instructions were erroneous. We affirm.

## FACTS

Minnesota State Trooper Andrew Martinek stopped appellant David Lamar Everett's vehicle after observing the vehicle being driven at night without its rear lights illuminated. During his interaction with Everett, Trooper Martinek noticed that Everett slurred his words, smelled of alcohol, and had bloodshot, watery eyes. After conducting field sobriety tests and obtaining Everett's preliminary-breath-test result of .11, Trooper Martinek arrested Everett for driving while impaired (DWI).

Trooper Martinek placed Everett in the back of his squad car and read him Minnesota's implied-consent advisory. Next, Trooper Martinek transported Everett to the Hennepin County Jail and provided Everett a telephone book and access to a telephone. After ten minutes, Everett had placed one phone call. Trooper Martinek reminded Everett that he had to make a decision regarding chemical testing within a reasonable amount of time and that he would have to make his decision on his own if he was unable to contact an attorney. Twenty additional minutes passed, and Everett did not

2

make another phone call. Trooper Martinek informed Everett that his time to contact an attorney had passed. Trooper Martinek told Everett that he would have to make a decision whether to submit to chemical testing on his own and that failure to make a decision would constitute test refusal. Trooper Martinek asked Everett if he would submit to testing eight times and each time, Everett evaded the question or refused to answer.

Respondent State of Minnesota charged Everett with third-degree refusal to submit to a chemical test and fourth-degree DWI. Everett filed a pretrial motion to "suppress evidence and dismiss" arguing, in part, that Minnesota's implied-consent law is unconstitutional and that Trooper Martinek did not provide him a reasonable period of time in which to contact an attorney. The district court denied Everett's motion, concluding that the "Minnesota Implied Consent Law and refusal law are not unconstitutional" and that Everett "was afforded a reasonable period of time to contact an attorney." The case was tried to a jury, and Everett was found guilty of test refusal. The district court stayed execution of sentence.

In a related civil case based on the same underlying events, respondent Commissioner of Public Safety revoked Everett's driver's license under the implied-consent law, based on his refusal to submit to chemical testing. Everett filed an implied-consent petition, challenging the revocation of his driver's license. In his petition, Everett asserted, among other things, that Minnesota's implied-consent procedure

> violates state and federal constitutional provisions for due process of law, equal protection of the laws, the right to redress grievances, separation of powers, double jeopardy, the

3

state constitutional right to consult with an attorney, the court's inherent power to supervise the court process, and the rules of professional conduct for attorneys and for judges.

The district court issued a written order, stating only "[t]hat the revocation of the driving privileges of the petitioner under authority of Minnesota Statute 169A.53, be and hereby is SUSTAINED."

Everett appealed from his criminal conviction, A14-0083, and from the district court's order sustaining the revocation of his driving privileges, A14-0896. This court consolidated the appeals.

## DECISION

### I.

We first address the issues raised in Everett's appeal from his criminal conviction. Everett's statement of the case indicates that he "appeals the district court's rulings that the refusal statute is constitutional, that he was provided sufficient time to contact an attorney as a matter of law, and challenges the trial court's ruling on [his] proposed jury instruction for driving while intoxicated—refusal." However, Everett's brief does not contain any argument regarding the district court's ruling that he was provided sufficient time to contact an attorney. That issue is therefore waived, and we do not address it. *See State v. Jackson*, 655 N.W.2d 828, 837 (Minn. App. 2003) ("An issue that is not addressed in the 'argument portion' of a brief is deemed waived on appeal."), *review denied* (Minn. Apr. 15, 2003). Our analysis of Everett's two remaining issues follows.

4

*Constitutional Challenge to the Test-Refusal Statute*

The constitutionality of a statute presents a question of law, which appellate courts review de novo. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011). "Minnesota statutes are presumed constitutional and . . . [an appellate court's] power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). "The party challenging a statute has the burden of demonstrating, beyond a reasonable doubt, that a constitutional violation has occurred." *Id.*

Everett contends that

> [t]he Minnesota Implied Consent Law as a whole violates due process of law because it makes the constitutional conduct of refusing to consent to a warrantless search, and otherwise requiring law enforcement [to] obtain a warrant or operate under an exception to the warrant requirement, as unlawful; and the implied consent laws unconstitutionally conditions the exercise of the privilege of driving on the waiver of an individual's right to be free of unreasonable search and seizure of BAC evidence.

Everett argues that "a person [has a] constitutional right to withhold consent voluntarily under the Fourth Amendment," and because "[t]he Minnesota implied consent laws as it currently stands renders any refusal unlawful when a person is not required to give consent, . . . it . . . violates a person's due process of law."

The United States Constitution and the Minnesota Constitution provide that the government cannot deprive a person of "life, liberty, or property, without due process of law." U.S. Const. XIV, § 1; Minn. Const. art. I, § 7. The due-process protections of the United States Constitution and the Minnesota Constitution are coextensive. *Sartori v.*

*Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988). "[S]ubstantive due process protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). Appellate courts will strictly scrutinize a challenged law that implicates a fundamental right. *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn. 1983). And we will uphold such a law under the strict-scrutiny test only if it serves a compelling state interest and is narrowly tailored to serve that interest. *See id.* But when a challenged statute does not implicate a fundamental right, appellate courts will hold that it violates substantive due process only if, applying a rational-basis test, the challenger has established that the statute is not reasonably related to a legitimate governmental interest. *In re Individual 35W Bridge Litigation*, 806 N.W.2d 820, 830 (Minn. 2011).

Everett does not identify the specific statute that he challenges. Because he was convicted of refusal to submit to chemical testing and he refers to the "DWI-Refusal Statute" in his brief, we presume he challenges Minn. Stat. § 169A.20, subd. 2 (2012), which states: "Refusal to submit to chemical test crime. It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)."

Substantively, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice

6

would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268 (1997) (quotations omitted). In substantive-due-process cases, the Supreme Court has required "a 'careful description' of the asserted fundamental liberty interest." *Id*. at 721, 117 S. Ct. at 2268.

Everett describes the purported fundamental right at stake in this case as a "fundamental right to be free of unreasonable searches and seizures." But section 169A.20, subdivision 2 does not authorize a search or seizure. This court recently noted that, "[i]n most situations, the plain language of the [implied-consent statutes] authorizes a search of a driver's blood, breath, or urine *only* if the driver gives express, valid consent to such a search." *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 725 (Minn. App. 2014) (footnote omitted). The implied-consent statutes authorize a search without the driver's express consent only when (1) there is probable cause to believe the driver committed criminal vehicular homicide or criminal vehicle operation or (2) the driver is unconscious or "otherwise in a condition rendering the [driver] incapable of refusal." Minn. Stat. §§ 169A.52, subd. 1, .51, subd. 6 (2012). Neither circumstance is applicable here.

Everett also describes the fundamental right at stake as "the right to withhold consent from law enforcement without threat of prosecution." But Everett does not explain how that purported fundamental right is deeply rooted in our nation's history and tradition. Instead, he appears to rely on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), as support for the proposition that "the right to withhold consent from law enforcement

7

without threat of prosecution" is a fundamental right. That reliance is misplaced. Neither *McNeely* nor *Brooks* suggest that implied-consent laws infringe on a fundamental right. *See McNeely*, 133 S. Ct. at 1566 (endorsing "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense" as one of the "legal tools" states have "to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws"); *Brooks*, 838 N.W.2d at 573 (stating, in dictum, "that Brooks has not demonstrated that Minnesota's implied consent statute is unconstitutional" without addressing whether a fundamental right is implicated).

In sum, Everett has not established the existence of a fundamental right warranting application of the strict-scrutiny standard. Thus, any substantive due-process challenge must proceed under the rational-basis standard. *See In re Individual 35W Bridge Litigation*, 806 N.W.2d at 830. But Everett does not offer any argument under that standard. Everett therefore has not shown that Minnesota's test-refusal statute violates substantive due process.

Everett's brief also intermittently refers to "the doctrine of unconstitutional conditions." But he does not present a clear argument regarding the doctrine's application, if any, to this case. In *Stevens*, we noted that "there is no authority for the proposition that the unconstitutional-conditions doctrine applies to a constitutional challenge based on the Fourth Amendment" and that neither the Minnesota Supreme Court nor the United States Supreme Court has ever held that it does. 850 N.W.2d at

724-25. Because Everett does not offer argument or authority to support his assertion that the test-refusal statute violates the unconstitutional-conditions doctrine, the issue is waived. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on 'mere assertion' and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection."), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

Lastly, Everett asserts that "Minnesota's implied consent laws exceeds its authority under the Tenth Amendment by criminalizes lawful conduct when punishing a defendant's withholding of consent." The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Everett does not explain how Minnesota's test-refusal law violates the Tenth Amendment of the United States Constitution, and the purported violation is not obvious to this court. This issue is therefore waived. *See Wembley*, 712 N.W.2d at 795.

In conclusion, Everett has not met his burden to show, beyond a reasonable doubt, that his conviction of test refusal is based on an unconstitutional statute. We therefore affirm his criminal conviction.

*Challenge to the District Court's Jury Instructions*

We next consider Everett's challenge to the district court's jury instructions. "Jury instructions, reviewed in their entirety, must fairly and adequately explain the law of the case. A jury instruction is erroneous if it materially misstates the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) (citation omitted). "[Appellate courts]

9

review a district court's decision to give a requested jury instruction for an abuse of discretion." *Id*. at 361.

Everett argues that "the district court erred in its refusal jury instruction by directing a finding of fact on a mixed question of law and fact and its error had a significant effect on the jury's verdict." The state responds that the record on appeal is inadequate to address Everett's argument. The record contains a partial transcript that includes the state's rebuttal argument at trial and the district court's instructions regarding jury deliberation. There is no transcript of the remainder of the trial, specifically, the witness testimony, the closing arguments, or the district court's jury instructions regarding the elements of the charged offenses.

The partial transcript indicates that the district court asked both parties if they "wish to call the court's attention to any errors, omissions or corrections in the instructions." Everett's attorney responded: "Nothing from the defense, Your Honor." But documents in the record indicate that Everett proposed an alternative instruction. On this record, we do not know whether the district court expressly ruled on Everett's proposed instruction. Thus, we are not sure whether Everett preserved his objection to the district court's jury instructions for appeal. *See State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998) ("A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal."); *State v. Tayari-Garrett*, 841 N.W.2d 644, 655-56 (Minn. App. 2014) (stating that an appellate court generally will not consider matters that the district court did not consider), *review denied* (Minn. Mar. 26, 2014).

10

Because the record does not contain a transcript of all of the instructions that were read to the jury, we cannot determine if there was an error. Moreover, if there was an error, Everett would have to show prejudice to obtain a new trial. If Everett objected to the jury instruction, a new trial would be required "only if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *Koppi*, 798 N.W.2d at 364 (quotations omitted). If Everett did not object, we would review the jury instructions for plain error and ask whether the error affected substantial rights in that it "was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 740-41 (Minn. 1998). But because we do not have a complete trial transcript we cannot determine whether the purported error—if any—affected the outcome of the case. *See Koppi*, 798 N.W.2d at 365 (stating that appellate courts "must evaluate the evidence presented at trial to determine whether the instructional error was harmless beyond a reasonable doubt"); *Griller*, 583 N.W.2d at 742 (analyzing trial testimony to determine whether "any erroneous instruction significantly affected the verdict").

It is the appellant's duty to order a transcript "of those parts of the proceedings not already part of the record which are deemed necessary for inclusion in the record." Minn. R. Civ. App. P. 110.02, subd. 1(a). An appellate court cannot presume error in the absence of an adequate record. *See Custom Farm Servs., Inc. v. Collins*, 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976) (declining to consider an allegation of error in the absence of a transcript). When an appellant fails to provide this court with a transcript necessary for review of the issues raised on appeal, "the decision below must be

affirmed." *State v. Heithecker*, 395 N.W.2d 382, 383 (Minn. App. 1986). Such is the case here.

## II.

We next address Everett's appeal of the district court's order sustaining the revocation of his driving privileges in the civil implied-consent case. He contends that "[t]he Minnesota Implied Consent Law violates due process of law by making constitutional conduct, of declining to consent to testing, unlawful." He argues that "Minnesota's implied consent laws exceeds its authority under the Tenth Amendment by criminalizes lawful conduct when punishing a defendant's withholding of consent," and that "the DWI-Refusal statute violates [his] fundamental right to be free of unreasonable searches and seizures." His briefing on this issue is identical to the briefing in his criminal appeal. Thus, it focuses on the constitutionality of the criminal test-refusal statute.

Everett's argument is entirely unpersuasive because his civil implied-consent case does not involve a criminal test-refusal charge. The dispositive order in the implied-consent case is the civil order sustaining the commissioner's revocation of Everett's driving privileges. As to the constitutionality of that order, Everett argues:

> The Minnesota's legislature may make it a condition of licensure that drivers waive their constitutional right to privacy with regard to their alcohol concentration while driving, but the *permissible* remedy for refusal or withdrawing that consent is, and always has been, the loss of that license—not jail. . . .
>
> . . . To decree that it is a crime to refuse testing is quite a different thing than to provide that one's license to drive

12

will be revoked. The latter is a civil, administrative compulsion, *well within the authority of the legislature*, which has made licensing conditional on the "implied" "consent" to this type of search. It is *reasonable and constitutionally acceptable* for a majority of society to say, through its representatives, that as a condition of driving lawfully, a citizen must relinquish his or her privacy to this extent. It is altogether another, absolutely unconstitutional thing to say that a breach of the "implied contract" will have criminal consequences.

(Emphasis added.)

Everett's brief concludes with a request that this court "reverse the district court's decision." But the only decision before us for review in the civil implied-consent case is the district court's decision sustaining the revocation of Everett's driving privileges under the implied-consent law, and Everett agrees that the civil revocation consequence is constitutionally reasonable. His concession is consistent with this court's recent holding in *Stevens*. *See Stevens*, 850 N.W.2d at 727 (concluding that "the implied-consent statute . . . satisfies the general reasonableness requirement of the Fourth Amendment").

In conclusion, Everett has not provided a basis for this court to reverse the district court's order sustaining the revocation of his driving privileges in his civil implied-consent case. We therefore affirm the order.

**Affirmed.**