FILED

11/21/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 26, 2017 Session

## STATE OF TENNESSEE v. PASCASIO MARTINEZ

**Appeal from the Criminal Court for Knox County**
**No. 105827     Scott Green, Judge**

---

### No. E2016-01401-CCA-R3-CD

---

The Defendant, Pascasio Martinez, was convicted by a jury of two counts of driving under the influence (DUI), a Class A misdemeanor, and two counts of DUI, fourth offense, a Class E felony. See Tenn. Code Ann. §§ 55-10-401, -402(a)(4). The trial court merged the Defendant's convictions and imposed a sentence of two years' confinement with 150 days of mandatory service. On appeal, the Defendant contends (1) that the trial court erred in admitting the results of forensic testing on the Defendant's blood because the State failed to establish "a valid chain of custody"; (2) that the use of the Defendant's official driver record to prove his prior DUI convictions violated his Confrontation Clause rights; and (3) that the Defendant's official driver record was not sufficient evidence to establish his prior DUI convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mark E. Stephens, District Public Defender; and Denise Maryam Faili (at trial) and Jonathan Patrick Harwell (at trial and on appeal), Assistant District Public Defenders, for the appellant, Pascasio Martinez.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme P. Allen, District Attorney General; and Gregory Eshbaugh and Joe Welker, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

At approximately 2:30 a.m. on August 9, 2014, Knoxville Police Department (KPD) Officer Darrin Carden was assisting other KPD officers in a traffic stop just off of Chapman Highway. Officer Carden testified that he saw a silver SUV "traveling northbound" toward downtown Knoxville with "no lights on at all." Officer Carden and his partner got in their patrol car and "went after the vehicle traveling without headlights." Officer Carden admitted that he lost sight of the SUV "for a just a second" as it went over a hill. However, Officer Carden testified that he caught up with the SUV at a red light and that he was "very sure that it was [] the same vehicle," even though the SUV's lights were on by the time Officer Carden got to the red light.

Officer Carden pulled over the SUV. Officer Carden testified that the Defendant was the driver of the SUV. According to Officer Carden, there "was a strong odor of alcohol" coming from the SUV and "on [the Defendant's] breath." The Defendant told Officer Carden that he was "coming from a bar" and had drunk two beers that night. Officer Carden recalled that when he asked the Defendant to turn off the vehicle, the Defendant "actually turned the windshield wipers on." Officer Carden also recalled that the Defendant stumbled when he got out of the SUV, "was really unsteady on his feet," and dropped his wallet.

Officer Carden administered two field sobriety tests to the Defendant, "the walk and turn" and "the one leg stand." Officer Carden testified that on the walk and turn, the Defendant "missed [putting his] heel to [his] toe several times," "stopped counting out loud," and took more steps than he was instructed to take. On the one leg stand, Officer Carden testified that the Defendant "swayed," "put his foot down," and was not able to count past ten. Officer Carden then arrested the Defendant on suspicion of DUI based upon the SUV's initially traveling with no lights on, the Defendant's performance on the field sobriety tests, and the Defendant's general demeanor during the stop. However, Officer Carden admitted that he did not observe the Defendant's driving erratically outside of the SUV's not having its lights on when Officer Carden first observed it.

After his arrest, the Defendant agreed to a blood draw. Officer Carden transported the Defendant to a nearby hospital. Officer Carden testified that he took the Defendant to the hospital's phlebotomy lab where a phlebotomist drew the Defendant's blood. According to Officer Carden, the phlebotomist attached the Defendant's information to the vials, sealed the vials in a plastic bag, placed the bag with the vials in a box, and gave the box to Officer Carden. Officer Carden admitted that he was not in the room when the phlebotomist drew the Defendant's blood and that he did not know the name of the phlebotomist.

Officer Carden testified that he transported the box with the Defendant's blood samples to the police department where he placed it in a "confiscation box." Officer Carden described the confiscation box as a lockbox inside a refrigerator. According to

Officer Carden, he locked the Defendant's blood samples in the confiscation box and dropped the key "inside [the box] where nobody [but a member of the KPD's confiscation department could] get it out." Officer Carden testified that it was his understanding that after he locked the samples in the confiscation box they would be taken to the Tennessee Bureau of Investigation (TBI) "from [the KPD's] confiscation department."

TBI Special Agent Regina Aksanov testified that she was a forensic scientist in the TBI's "toxicology unit." Agent Aksanov testified that her file showed that the TBI received the Defendant's blood samples from the KPD on August 14, 2014. Agent Aksanov explained that the samples had been placed in a locked "drop box" located inside the TBI's building. Agent Aksanov further explained that an evidence technician removed the samples from the drop box and opened the packaging.

According to Agent Aksanov, the evidence technician noted what was inside the package and would have noted if the package appeared to have been tampered with. Agent Aksanov testified that there were no notes in her file from the evidence technician suggesting that the package had been tampered with. According to Agent Aksanov, the evidence technician then placed the samples in a refrigerated vault to be stored until Agent Aksanov removed them for analysis. Agent Aksanov testified that the Defendant's blood samples appeared "well preserved" and were "not clotted" when she performed her analysis. After forensic testing, Agent Aksanov determined that the Defendant's blood alcohol content was .168 percent.

Based upon the foregoing, the jury convicted the Defendant as charged of two counts of DUI. The issue of the Defendant's prior DUI convictions was then presented to the jury. The State entered into evidence certified copies of the Defendant's two prior DUI convictions from Davidson County in 2007 and 1997. The State also entered into evidence, over the Defendant's objection, a copy of the Defendant's official driver record, which listed a third DUI conviction from Rutherford County in 2004. Based upon this evidence, the jury convicted the Defendant as charged of two counts of DUI, fourth offense. At a subsequent sentencing hearing, the trial court merged all of the convictions and imposed a sentence of two years' confinement with 150 days of mandatory service. This appeal followed.

## ANALYSIS

### I. Chain of Custody

The Defendant contends that the trial court erred in admitting the results of forensic testing on his blood because the State failed to establish "a valid chain of custody." The Defendant argues that the chain of custody was incomplete because there

was no testimony about "what occurred" at the police station after Officer Carden placed the blood samples in the confiscation box. The Defendant also argues that the chain of custody was incomplete because there was no testimony from or about the TBI evidence technician who handled the Defendant's blood samples. The State responds that it was not required to call every witness in the chain of custody and that the testimony of Officer Carden and Agent Aksanov was sufficient to establish "a reasonable assurance of the identity of the evidence."

Tennessee Rule of Evidence 901(a) requires the authentication or identification of evidence as "a condition precedent to [its] admissibility." This requirement is satisfied "by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Put another way, "'a witness must be able to identify the evidence or establish an unbroken chain of custody.'" State v. Cannon, 254 S.W.3d 287, 296 (Tenn. 2008) (quoting State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000)). This rule "is designed to insure 'that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" Id. (quoting Scott, 33 S.W.3d at 760).

Each link in the chain of custody "should be sufficiently established," but the rule "does not require that the identity of tangible evidence be proven beyond all possible doubt; nor should the State be required to establish facts which exclude every possibility of tampering." Cannon, 254 S.W.3d at 296 (citing Scott, 33 S.W.3d at 760). To that end, the State is not required "to call all of the witnesses who handled the item." Id. Rather, "when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." Id. This court reviews a trial court's determination regarding the chain of custody for an abuse of discretion. Id. at 295.

The facts of this case are similar to two prior decisions of this court. In State v. Earnest Laning, a panel of this court held that there was "a sufficient chain of custody to reasonably assure the blood sample's identity and integrity" when the officer received the sample from a phlebotomist, the officer then placed the sample in a "locked evidence refrigerator" where it could only be removed by the evidence custodian but did not know if the sample was mailed or hand-delivered to the TBI, the testing TBI agent testified that the sample was retrieved from the TBI's drop box, the TBI agent explained that the sample was received by an evidence technician who opened the package and "would have noted in the case file if someone had tampered with the box," and the TBI agent testified that the blood tube was still vacuum-sealed when she opened it. No. E2011-01882-CCA-R3-CD, 2012 WL 3158782, at *3 (Tenn. Crim. App. Aug. 6, 2012).

Likewise, in State v. Michael Joseph Arbuckle, a panel of this court held that "the State established the identity and integrity of the evidence through a sufficient chain of

custody" when the officer received a blood sample from the "hospital attendant" who drew the defendant's blood, the officer testified that he then placed the sample in an "evidence locker to be mailed to the [TBI] crime laboratory," and the testing TBI agent "testified regarding the procedure for receiving and documenting blood samples and that any irregularities in the shipping or receiving of the sample would have been noted" in the TBI file. No. M2000-02885-CCA-R3-CD, 2001 WL 1545494, at *3 (Tenn. Crim. App. Dec. 5, 2001).

The Defendant cites to this court's recent opinion in State v. Reginald Bernard Coffee, No. M2016-01834-CCA-R3-CD, 2017 WL 3836023 (Tenn. Crim. App. Aug. 31, 2017), perm. app. filed (Tenn. Oct. 31, 2017), to support his argument that the chain of custody for his blood sample was incomplete. However, the facts of Coffee are distinguishable from this case. In Coffee, "no standard procedures for storing evidence were described at trial," nor was there any proof of what was done with the evidence between the time the officer collected the evidence and when it was received "in the latent fingerprint division." Id. at *14. Furthermore, the fingerprint examiner "did not testify about the condition of the envelope [containing the evidence] when she received it, whether it was properly sealed, or the latent fingerprint division's standard procedure for storing and testing fingerprint evidence." Id.

The facts of this case are more similar to Laning and Arbuckle than to Coffee. Here, Officer Carden testified that he received the Defendant's blood samples from the phlebotomist and that he transported them to the police station where he placed them in a confiscation box. Officer Carden explained that the samples would be stored in the confiscation box until they were sent to the TBI. Officer Carden further testified that he locked the confiscation box and dropped the key inside the box. Agent Aksanov testified that the TBI file noted that the Defendant's samples had been delivered by the KPD in the TBI's drop box. Agent Aksanov explained that an evidence technician would have removed the samples from the drop box, opened them, and noted in the TBI file any evidence of tampering. There were no such notations in the TBI file, and Agent Aksanov testified that the Defendant's blood samples appeared "well preserved" and were "not clotted" when she removed them for analysis. Accordingly, we conclude that the State established a sufficient chain of custody and that the trial court did not abuse its discretion in admitting the test results into evidence.

## II. Right to Confrontation

The Defendant contends that the use of his official driver record to prove one of his prior DUI convictions violated his constitutional right to confront the witnesses against him. The Defendant argues that the official driver record was testimonial because it was "generated for purposes of litigation." The Defendant further argues that the certification of the official driver record was testimonial because it was "a statement by a

non-testifying witness, offered for the purposes of establish[ing] [the Defendant's] guilt at trial, and created at a time after [the Defendant] had been arrested and charged." The State responds that the official driver record and its accompanying certification were not testimonial; therefore, the admission of the official driver record did not violate the Defendant's Confrontation Clause rights.

Criminal defendants have the right to confront the witnesses against them under both the United States and Tennessee Constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Our supreme court has noted that "the threshold question in every case where the Confrontation Clause is relied upon as a bar to the admission of an out-of-court statement is whether the challenged statement is testimonial." State v. Hutchison, 482 S.W.3d 893, 905 (Tenn. 2016). To determine whether a statement is testimonial for purposes of the Confrontation Clause, Tennessee courts first ask if the statement's "primary purpose is to prove past events potentially relevant to a criminal prosecution." Id. at 910. Then the court must determine if the statement either "has 'indicia of solemnity'" or its primary purpose "was to accuse a targeted individual." Id. If the statement meets the first standard "and either of the latter two standards, it is considered testimonial within the meaning of the Confrontation Clause." Id. at 910-11.

Initially, we note that this court has previously held that official driver records fall within the public records hearsay exception. See State v. Baker, 842 S.W.2d 261, 264 (Tenn. Crim. App. 1992) (citing Tenn. R. Evid. 803(8)). However, the question of whether use of these records violates the Confrontation Clause appears to be one of first impression in Tennessee. The majority of other jurisdictions that have addressed this issue have held that "driving records are not testimonial." State v. Leibel, 838 N.W.2d 286, 295 (Neb. 2013) (citing State v. King, 146 P.3d 1274 (Ariz. Ct. App. 2006); Card v. State, 927 So. 2d 200 (Fla. Dist. Ct. App. 2006); State v. Shipley, 757 N.W.2d 228 (Iowa 2008); Commonwealth v. McMullin, 923 N.E.2d 1062 (Mass. App. Ct. 2010); State v. Vonderharr, 733 N.W.2d 847 (Minn. Ct. App. 2007); State v. Davis, 156 P.3d 93 (Or. Ct. App. 2007)). We see no reason to depart from the majority view on this issue.

Tennessee Code Annotated section 55-50-204(a) requires the department of safety to "file every application for a license received by it." The department of safety is further required to file the following:

[A]ll accident reports, abstracts of court records of convictions, and driver education or improvement course completion certification received by it under the laws of this state, and, in connection therewith, maintain convenient records or make suitable notations in order that an individual record of each licensee showing the convictions of such licensee and the traffic accidents in which the licensee has been involved and the driver education or improvement courses the licensee has completed shall be

-6-

readily ascertainable and available for the consideration of the department upon any application for renewal of license and at other suitable times.

Tenn. Code Ann. § 55-50-204(b). The department of safety will prepare and furnish copies of a person's official driver record for a small fee. Tenn. Code Ann. § 55-50-204(d).

Simply put, "[t]he creation and maintenance of driving records is a ministerial duty for the benefit of the public, utilized by drivers for many purposes, including the procurement of insurance or of commercial driving licenses." Leibel, 838 N.W.2d at 295 (internal footnotes and citations omitted). Furthermore, these records "are prepared during routine duties at a time when they do not pertain to any particular pending matter." Id. The Defendant cites to Tennessee Code Annotated section 55-10-405(d) to assert that the official driver record "was required [by statute] to be generated for purposes of litigation." However, section 55-10-405(d) merely requires that a defendant be provided with a copy of his official driver record at his arraignment or first court appearance. As the State notes in its brief, "the printout is only a copy of the preexisting record."

We also join with the majority of other jurisdictions that have found that the certification of a public record is not testimonial. Leibel, 838 N.W.2d at 296 (citing United States v. Adefehinti, 510 F.3d 319 (D.C. Cir. 2007); State v. Bennett, 162 P.3d 654 (Ariz. Ct. App. 2007); Jasper v. Commonwealth, 644 S.E.2d 406 (Va. Ct. App. 2007)). The reason for this is that if "the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records [does]." United States v. Ellis, 460 F.3d 920, 927 (7th Cir. 2006). Accordingly, we hold that the use of the Defendant's official driver record did not violate his rights under the Confrontation Clause.

### III. Sufficiency of the Evidence

The Defendant contends that his driver record was not sufficient evidence to establish his third prior DUI conviction. The Defendant concedes that the certified copies of Davidson County DUI convictions were "adequate and appropriate" evidence to establish the existence of those convictions. Instead, the Defendant argues that his driver record contains only a "cryptic entry" regarding his Rutherford County conviction that "was inadequate to prove that [he] had been convicted of DUI on a prior occasion." The State responds that the Defendant's driver record provided sufficient evidence of the Rutherford County DUI conviction.

This court has previously held that a certified copy is not the only means by which the State can prove the existence of a prior DUI conviction. State v. Clever, 70 S.W.3d 771, 775-76 (Tenn. Crim. App. 2001). More importantly, Tennessee Code Annotated

section 55-10-405(d) provides that "[a] certified computer printout of the official driver record maintained by the department of safety <u>shall</u> constitute prima facie evidence of any prior conviction." (Emphasis added). The Defendant contends that the driver record cannot be evidence of a prior DUI conviction because the words "conviction" or "guilty" are not used in the document. However, driver records are statutorily mandated to include criminal convictions, not criminal charges. <u>See</u> Tenn. Code Ann. § 55-50-204(b).

Furthermore, the Defendant has waived any challenge to the accuracy of the driver record because he did not file a written pretrial motion challenging the validity of the Rutherford County DUI conviction. <u>See</u> Tenn. Code Ann. § 55-10-405(d) (providing that "[i]f the defendant alleges error in the driving record in a written motion, the court may require a certified copy of the judgment be provided for inspection by the court as to validity prior to the introduction of the department printout into evidence"). Accordingly, we conclude that the Defendant's official driver record was sufficient to establish his Rutherford County DUI conviction.[1]

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[1] At the Defendant's trial, the prosecutor explained that, despite his having subpoenaed the appropriate Rutherford County officials for a certified copy of the conviction multiple times, he had only received "a printout." The State obtained a certified copy of the Rutherford County conviction after the Defendant's trial but prior to his sentencing hearing.